# Whitesides *against* Russell.

If a steamboat on the Ohio river run upon a stone and knock a hole in her bottom, the carrier will not be discharged from liability by virtue of the clause in his bill of lading, "The dangers of the river only excepted:" but in order to relieve himself from responsibility it is incumbent on him to prove that due diligence and proper skill were used to avoid the accident, and that it was unavoidable.

The privilege of transhipment reserved to a common-carrier in his bill of lading does not discharge him from any liability which is incident to his contract until the goods be delivered at the destined port.

An agreed case in the nature of a special verdict is to be considered as a special verdict found by a jury, and if it be defective in substance, the judgment rendered upon it will be reversed and a *venire de novo* awarded.

ERROR to the District Court of *Allegheny* county.

Samuel Russell against Whitesides and others, owners of the steamboat "Norfolk." This was an action on the case in which the plaintiff declared on the contract of the defendants to deliver for the plaintiff at Pittsburgh 7918 pounds of rice, and that they did not deliver the same; but the declaration did not, in any part of it, state the value of the rice. The second count was for $1000, for money laid out, expended and paid by the plaintiff for the defendants, and concluded " to the damage of the plaintiff one thousand dollars, &c." The parties subsequently agreed to the following facts in the nature of a special verdict:

That twelve tierces of rice were shipped on the fourth of June 1840 for the plaintiff, at New Orleans, in Louisiana, by Lauve Brothers, a commercial house in said city, on board the steamboat Norfolk, owned by the defendants, to be delivered at Pittsburgh, with liberty of reshipping on good boats, agreeably to the terms and responsibilities of the following bill of lading of the said goods, viz:

" Shipped, in good order and well-conditioned, by Lauve Brothers, on board the steamboat called the Norfolk, whereof ———— is master, now lying in the port of New Orleans and bound for Pittsburgh—to say, twelve tierces of rice—7918 lbs.,—being marked and numbered as in the margin,—and are to be delivered, in the like good order and condition, at the port of Pittsburgh,

[Whitesides v. Russell.]

(the dangers of the river only excepted), unto Mr S. Russell, or to his assigns; he or they paying freight for the same, with the privilege of reshipping on good boats.

" In witness whereof, the master or clerk of the said boat hath affirmed to two bills of lading, all of this tenor and date, one of which being accomplished, the other to stand void.

" Dated in New Orleans the 4th day of June 1840.
(Signed)          C. S. M'Coy, Clerk."

Which twelve tierces of rice, weighing 7918 pounds, were reshipped by the master of the Norfolk, at Cincinnati, on the 16th day of June, on board the steamboat Levi Welsh, and that said steamboat Levi Welsh was a good boat. That at Blannerhassett's island the said Levi Welsh, with said rice on board, struck a stone in the Ohio river and knocked a hole in her bottom, by which the said rice was damaged and lost.

If, on the above facts, the court should be of opinion that the defendants are responsible, they shall enter judgment in favour of the plaintiff, for the sum of ——. If the court should be of opinion that the defendants are not responsible, they will enter judgment for the defendants, with leave to either party to take a writ of error.

After argument, the court below rendered a " judgment for the plaintiff." The amount for which the judgment should have been entered not having been agreed upon by the parties, the plaintiff took out a writ of inquiry and had the damages assessed at $419.65, for which he issued an execution, which on motion the court set aside, on the ground that the judgment was not interlocutory but final. The plaintiff then issued an execution on the judgment for $1000, the amount of damages laid in the declaration, with direction to the sheriff to collect only $419.65, the alleged value of the rice. This the court below refused to set aside, when this writ of error was sued out.

*M'Clure* and *M'Candless*, for plaintiff in error, on the subject of the liability of carriers, cited 8 *Serg. & Rawle* 533; 9 *Watts* 88; 4 *Whart.* 204; *Sto. on Bl.* 366 *pl.* 573; 7 *Cowen* 500; 3 *Taunt.* 164; 1 *Con. Rep.* 487; 11 *Eng. Com. L.* 244; 15 *Eng. Com. L.* 422. On the subject of the defectiveness of the case stated, cited 3 *Chit. Pr.* 678; 2 *Pain. & Duer. Pr.* 285; *Rob. Pr.* 374.

*Dunlop*, for defendant in error, on the first point, cited 5 *Watts* 424; 6 & 7 *Ohio Rep.* 143; 2 *Scammond Ill. Rep.* 288; 2 *Hill* 623; 5 *Rawle* 189; 25 *Wend.* 660; 7 *Yerger* 340; 6 *Martin* 680; 2 *Stark Ev.* 287; 4 *Yerger* 48; 3 *Munf.* 239. On the second point, cited 10 *Coke* 118; *Cro. Eliz.* 214; 2 *Arch. Pr.* 22; *Cro. Car.* 143; 4 *Watts* 413; 7 *Watts* 466; 1 *Sel. Pr.* 474; 2 *Wilson* 374; 2 *Whart.* 210; *Cowp.* 843; 1 *Arch. Pr.* 225; 1 *Watts* 374.

[Whitesides v. Russell.]

The opinion of the Court was delivered by

ROGERS, J.—This was an action to recover the value of twelve tierces of rice, shipped at New Orleans on board the steamer Norfolk, then lying at New Orleans, bound for Pittsburgh. The defendants agreed to deliver the goods, in good order, at the port of Pittsburgh, (the dangers of the navigation excepted), reserving the privilege of reshipping the same in good boats. The rice was reshipped at Cincinnati on board the steamer Levi Welsh, which it is agreed was a good boat. At Blannerhassett's island the Levi Welsh struck upon a stone in the Ohio river and knocked a hole in her bottom, by which the rice was damaged and lost. The declaration contains two counts, one on the special agreement, in which the pleader omits to state the value of the rice; the other is a common count for one thousand dollars, money laid out and expended for the defendants at their instance and request. The cause was submitted to the court on certain facts agreed upon by the counsel in the nature (as it is expressed) of a special verdict. After stating the facts they proceed to say : If, on the above facts, the court should be of opinion that the defendants are responsible, they shall enter judgment in favour of the plaintiff for the sum of ———. If the court should be of opinion that the defendants are not responsible, they will enter judgment for the defendants, with leave to either party to take out a writ of error. After argument, the court entered judgment for the plaintiff generally; this was a judgment for no certain sum or amount, as no sum is ascertained and inserted in the case stated. On the judgment so entered, a writ of inquiry was awarded, and the inquest assessed the damages at $419.65; but, on motion of the defendants, the writ was set aside.

Why the court made the rule absolute does not appear, but Judge Grier supposes it was set aside because it was thought to be a final and not an interlocutory judgment. That the judgment was not interlocutory admits not of doubt, and the only difficulty is, whether it is either final or interlocutory, or, in other words, whether the case is not so defectively stated as that the court could not render a judgment, there being nothing in the case to render judgment upon. The inquiry, which lies at the root of the case, I take to be this. Is the case so stated as that a valid judgment can be entered upon it? And this question will depend upon whether an agreed case, in the nature of a special verdict, is to be assimilated to a special verdict, or is it to be governed by the rules applicable to demurrers to evidence, judgments by default, *nil dicit*, or by confession? That it is to be likened to the former, and not the latter, appears to be plain, as well on authority as the reason of the thing. When the facts are agreed upon, as in the nature of a special verdict, something more is intended than to enable the parties to take a writ of error, as has been erroneously supposed. The parties agree that the facts shall be considered as

[Whitesides v. Russell.]

if found by special verdict.   A case stated is a substitute for a
special verdict, adopted for convenience to save the labour and
expense of finding the same facts by the jury in the form of a
special verdict.   It is, therefore, but a reasonable construction of
the agreement that it shall be attended with the same effects, and
liable to the same incidents.   This is the obvious and plain import
of the word.   And this is supported by authority, for that the
same particularity is required in an agreed case as in a special
verdict, appears from several adjudged cases.   Thus, if the case
stated or referred to in the verdict of the jury be too imperfect
for the court to determine the question of law arising upon it, the
same course will be pursued as upon a special verdict which is
defective ; that is to say, the verdict will be set aside and a *venire
de novo* awarded.   *Pegran* v. *Isabell*, 1 *Hen. & Mun*. 388.   And in
*Brewer and wife* v. *Opie*, 1 *Call*. 212, it is said : As the jury may
find, so the parties may agree to all the facts belonging to the case,
and refer to the court the law arising therefrom.   Such a case
agreed should be as full and certain as a special verdict.   If the
case agreed be too uncertain for a judgment to be given thereon,
it will be set aside and further proceedings directed.   So in *Jones*
v. *M'Williams*, 6 *Munf*. 301, it is ruled that when a verdict has
been found subject to the opinion of the court, or a case agreed is
defective, having omitted some important fact, a *venire de novo* is
awarded.   In *Robinson's Practice* 374, it is stated, and in this we
entirely concur, that whether there be a special verdict subject to
the opinion of the court on specific points, or a case agreed by the
parties, the jury should always find, or the parties should agree,
for what the judgment shall be rendered in case the law be deter-
mined to be in favour of the plaintiff.   Sometimes, it is true,
according to our loose practice, for a supposed convenience the
case stated contains a stipulation that the amount shall afterwards
be ascertained by the parties; but such an agreement cannot be
inferred when the clause is omitted.   When the parties neglect to
ascertain the sum for which judgment is to be rendered in the
event of an opinion favourable to the plaintiff, it is the duty of
the court peremptorily to refuse to proceed to the argument until
the case stated is perfected; and where the parties refuse to
amend, as they may, to award a *venire de novo*.   A little atten-
tion in this particular, as in many other cases which have come
under the notice of the court, would have avoided great per-
plexity and no inconsiderable delay.   If, then, a case stated, or a
case stated in the nature of a special verdict, is governed by the
same rules as a special verdict, the point is ruled in *Miller* v.
*Hare*, 2 *Rawle* 52, where it is decided that where a jury omitted
to assess the amount, even in an action of debt, it was a mistrial.
A verdict in debt finding no specific sum is void.   Mr Justice Hus-
ton observes : It is useless to talk about judgments for default of
a plea, or by *nil dicit*, &c.   There a writ of inquiry will ascer-

[*Whitesides v. Russell.*]

tain the sum, or it may be done by the officers of the court; but who ever heard of a writ of inquiry of damages, or the sum being ordered to be ascertained by a prothonotary, after a jury being sworn at the bar, trying the cause and giving a general verdict? And the same, with equal truth, may be said of an agreed case, or a case stated in the nature of a special verdict. But for what amount is the judgment to be given, and by whom is it to be ascertained? The plaintiff cannot have a writ of inquiry, for it is a final and not an interlocutory judgment, nor are there any data on which a calculation can be made by the officers of the court. It would be manifestly unjust to give judgment for nominal damages, and equally so for the amount laid in the declaration; for although there are two counts, and one a money count, yet we cannot shut our eyes to the fact that the value of the goods lost is the *gravamen* of this action. If the value of the rice had been stated, or appeared in any way on the record, as unfortunately it did not, then the case in 2 *Serg. & Rawle* 1/2 might perhaps be an authority for the course pursued here. In that case it is said, that when judgments are confessed, if the plaintiff's demand is in the nature of a debt, which may be *ascertained by calculation*, whether it arise on a note or other writing, or on an account, it is sufficient to enter the judgment generally. The judgment is supposed to be for the amount laid in the declaration, and the execution issues accordingly. But how widely different is that case from this! Here there is neither note or other writing, nor an account; nothing certain on which a calculation can be made, independently of the finding of the inquest, to which resort cannot, without danger of injustice, be had, as that proceeding was unauthorized and *ex parte*.

The case stated raises two points on which, as the cause goes back for another trial, (to avoid trouble), we think proper to express an opinion. We concur with Judge Shaler on both points, and for the reasons given by him. The privilege of reshipment reserved in the bill of lading, is intended for the benefit of the carrier, but was not designed to limit his responsibility; he continues liable, notwithstanding this clause, by the express terms of the contract to deliver the goods safe and in good order at Pittsburgh; but he is at liberty to do this either in his own boat or in any other good boat which the carrier may select. This point has been ruled the same way in two of our sister States, Ohio and Illinois, 6 & 7 *Ohio Rep.* 143; *M'Gregor v. Kilgore,* 2 *Scammond* 288. A stipulation in a bill of lading that the shipper, in case of low water, may reship in other craft, does not vary his obligation to deliver safely. Such stipulation is for his benefit, and continues his liability if resorted to. It was but a privilege, say the court, to the carrier on the executing of his contract to convey and deliver, inserted for his own benefit, to secure him the advantage of as great a portion of the freight as he could earn, and to throw upon

[Whitesides v. Russell.]

the owner any increase of expense. The relation of carrier continues from the shipment of the goods until the arrival at the destined point of delivery.

We agree with the judge as to the first point. The carrier claims the benefit of an exemption arising from the loss being occasioned by a peril of the navigation, and surely it is incumbent on him to bring himself within the terms of it. It is not unreasonable to require him to prove the loss and manner of it, and further, that the usual care and diligence had been used to avoid it. This is peculiarly within his knowledge and in the knowledge of those who are in his employment and under his control. And this is the principle which may be collected from 1 *Con. Rep.* 189; 11 *Wend.* 25; 5 *Rawle* 189; 6 *Watts & Serg.* 408.

In the last case it is decided that where, on the facts presented, the defendant is liable for a loss occasioned by his negligence as a factor, the *onus* of proving what the actual loss was lies upon him and not on his principal, and in the absence of such proof the full value of the goods, or at least of the money produced by the sale, is the measure of damages.

Judgment reversed, and *procedendo* awarded.