## Case No. 18,209.

### The ZENOBIA.

[Abb. Adm. 80.] [1]

District Court, S. D. New York. Dec., 1847.

COMMON CARRIER—INJURY TO GOODS—LIABILITY —NEGLIGENCE OF MASTER—FAILURE TO PRESENT MANIFEST—BREACH OF PASSENGER CONTRACT—RECOVERY OF MONEY PAID.

1. Where there is no provision in the contract of affreightment varying the liability of the common carrier, he can only relieve himself from liability for injury to goods intrusted to him, by proving that it was the result of some natural and inevitable necessity superior to all human agency or control, or of a force exerted by a public enemy.

[Cited in Dibble v. Morgan, Case No. 3,881.]

2. A delay of the master to present to the custom-house officers at the port of consignment a proper manifest, by which delay the owner of goods shipped on board is unable to pass them through the custom-house, is a neglect of his duty as a master, for which the vessel is responsible.

3. Where libellant contracted with the master in a foreign port for a passage to this country, and paid a part of his passage-money in advance, but the master failed to fulfil his contract, and libellant was obliged in consequence to take passage in another vessel,—Held, that the vessel was responsible for the fulfilment of the agreement; and that the libellant was entitled to recover from her the passage-money paid in advance, the expenses incurred by him in awaiting the sailing of another ship, and the sum paid by him to such second vessel for his passage in her.

[Cited in Marshall v. Bazin, Case No. 9,125; Oakes v. Richardson, Id. 10,390; The Director, 26 Fed. 710.]

This was a libel filed by Henry J. Carr against the bark Zenobia in rem, and also in personam against her master, A. R. Cronstadt. The case was brought before the court in July, 1847, upon a motion by the master to require the libellant to elect between the two remedies sought by him, and upon exceptions filed by the owner, as claim-

[1] [Reported by Abbott Brothers.]

ant, to the jurisdiction of the court, and to the form of the libel. The decision of the court upon the questions then raised, is reported [in Case No. 18,208]. The cause now came up for final hearing upon the proofs.

As the case was peculiar in its character, and as the libel was required to be reformed in its construction, and when reformed was prosecuted to judgment without further objection to its structure, the libel is now inserted in full.

"The libel of Henry J. Carr, of the city of New York, against the Swedish bark Zenobia, her owners, and Auguste R. Cronstadt, master thereof, in a cause civil and maritime of contract as against said vessel and owners, and of tort or damage against said master, respectfully shows: That for the last six years previous to the month of December last, your libellant has been a resident merchant in Hong Kong, China. That in the month of November last your libellant having determined to return with his family to the United States to reside, your libellant chartered, at Hong Kong, a 'lorchar,' or small schooner, at an expense of $40, being the usual means and rate of travelling in China, and came down to Whampoa, a distance of some ninety miles, to secure a passage for your libellant and his family, consisting of a wife and infant child, to the port and city of New York. That on arriving at Whampoa your libellant found the Swedish bark Zenobia, whereof Auguste R. Cronstadt was master, the first vessel up for the port of New York from Whampoa; and thereupon, on the 14th day of November, 1846, your libellant shipped on board of said bark Zenobia eight cases of merchandise, seven marked L. E. C., Nos. 1, 2, 3, 4, 5, 6, 7, and one case marked F., No. 8, for which shipment the mate of said bark, H. Brandt, gave your libellant his receipt; also, three other cases of baggage and a chest of drawers, which contained the sum of $2,500, for which cases said mate gave your libellant his receipt in the Swedish language. That after putting on board of said bark the wearing apparel of your libellant and his family, your libellant also paid, on the said November 14, 1846, to the said A. R. Cronstadt, master of said bark, the sum of $150, as one half of the passage-money for your libellant and his family, from Canton to New York, and took from said master his receipt therefor. That the said master thereupon informed your libellant that said bark would not sail from Whampoa before the 1st of December following, and that he would advise your libellant, by letter, of the time of his sailing. That your libellant thereupon returned to Hong Kong for his family; and on the 21st day of November last your libellant received a letter from the said A. R. Cronstadt, dated the 18th of November, stating that he should sail with said bark from Whampoa on the 28th of November; and on the next day, the 22d of November, your libellant received an-

other letter from said A. R. Cronstadt, dated the 19th, stating that he had written a letter on the 18th, but lest it might not have been forwarded properly, he repeated its contents, namely, that he should so sail from Whampoa on the 28th of November. That thereupon your libellant got himself and family in readiness, and on the 24th day of November, left Hong Kong in a lorchar hired for the purpose, at the rate of $60, for Whampoa, and arrived there early on the morning of the 27th of November. That not seeing said bark in the river and your libellant being informed she had sailed the day previous, namely, the 26th of November, your libellant leaving his family on board of the boat which brought them from Hong Kong, immediately hired a small boat, and proceeded to Canton to see Messrs. McLean, Deane & Co., the agents of the owners of said bark, and consignees in Canton. That upon arriving at Canton, your libellant learned from the said house of McLean, Deane & Co., that said bark had sailed from Whampoa, on her voyage to the port of New York, on the 26th day of November, two days previous to the time said master had informed your libellant he should sail. That, as your libellant was informed by said firm, said master, after the 14th of November, informed them there were no passengers to go out in said bark. That at the request of your libellant, the agents and consignees of the owners of said bark, Messrs. McLean, Deane & Co., wrote a letter to the said master by your libellant, directed to him in New York, dated November 30, 1846, in which they say, among other things: 'We have perused your letters to Mr. Carr, at Hong Kong, wherein you informed him that you would not sail from Whampoa for New York until the 28th inst.; and as Mr. Carr kept his time, and was at Whampoa on the day you named, we consider that he has not in any way forfeited his right to a passage for himself and family to New York, as agreed between you and him, as per your receipt.' That in addition thereto, your libellant was also informed at Canton, by Mr. John N. Griswold, that said bark sailed on the 26th of November from Whampoa, and that on the 14th of November the said captain, A. R. Cronstadt was informed that he would be required to sail on the 25th of November.

"And your libellant further shows, that on his return to Whampoa, the only vessel then lying in the river of Whampoa, bound for the port of New York, was the ship Rainbow, which was to leave about the 3d of December following. That said bark Zenobia having on board all the property, money and effects of your libellant, together with the wearing apparel of your libellant and his family, your libellant was left at Whampoa wholly destitute, and was obliged to negotiate bills of exchange at an enormous rate of exchange, in order to raise funds to provide your libellant and his family with proper outfit at that season of the year for a voyage to the

United States, which cost your libellant $423, and to pay for his passage on board of said Rainbow, which was, under the circumstances in which your libellant was placed, fixed at $400. That your libellant was therefore obliged to borrow $1,000, at the rate of 50 per cent. upon the bills of exchange of your libellant, at three and four months, payable in the city of New York. That your libellant was obliged to incur an expense of $16 in going to and from Canton to Whampoa, to arrange for the passage of himself and family in the Rainbow; and during which time the detention of the lorchar in the river at Whampoa, on board of which was the family of your libellant, from the said 27th day of November to the 3d day of December, on which day your libellant went on board of said Rainbow, cost your libellant the further sum of $64, there being no hotel or house of entertainment at Whampoa, and he consequently being obliged to remain in the boat in the river, until they could go on board ship. That your libellant arrived in the port of New York, in the ship Rainbow, on the 1st day of March last, with his family, and finding that said bark Zenobia has not yet arrived, and your libellant being a stranger in the city, and destitute of the means of immediate support, in order to borrow a small sum to supply the current wants of your libellant and his family, your libellant was obliged to effect insurance on his property in said bark Zenobia, at an expense of $61, and to assign the policy to the party loaning your libellant the sum so required. ·

"And your libellant further shows, that said bark Zenobia arrived in the port of New York on or about the 9th day of May instant; and on or about the 10th instant your libellant saw said A. R. Cronstadt, who appeared surprised, and said to your libellant, 'I thought you were in China yet.' That your libellant thereupon requested the said master of said vessel to return to your libellant the money he had so advanced, and to repay your libellant the money and expenses he was put to in Whampoa by the detention of libellant, in consequence of the violation of said contract and undertaking of said master in relation to the transportation of your libellant and his family to the United States. That said master set your libellant at defiance, and told your libellant to get redress as he best could.

"And your libellant further shows unto your honor, that said master, following up the great injury and damage so as aforesaid done to your libellant, on the arrival of said bark Zenobia in the port of New York, has refused to make the proper entry of the merchandise and effects shipped by your libellant on board of said bark at Whampoa, on the manifest or proper exhibit of the cargo of said bark at the custom-house in the city of New York, thereby preventing your libellant or his consignee from obtaining the property and effects of your libellant from said bark, or the public store, should they be left there; the only entry on said manifest or exhibit in relation thereto, being as follows: '1—8 to order,' meaning packages No. 1 to 8 to order, said master refusing to enter the name of your libellant as shipper; it being customary and requisite to enter on said manifest or exhibit the numbers and marks of the several packages, the name of the person shipping them, and the name of the consignee, if consigned, as was the case with the whole of the cargo of said bark Zenobia on her said voyage, except the property and effects of your libellant; the entry of which, as above stated, was without marks and without the name of any person as shipper or consignee. That said master utterly refused to make any other entry, although informed by the collector of the port of New York, or his agent, that he is liable to a penalty of $500 for not so doing,—the said master, A. R. Cronstadt, at one time pretending that he does not know your libellant and never saw him before,—at another time, as your libellant is informed, alleging that your libellant came to him at Whampoa destitute, and tried to beg a passage for himself and family to the United States, all of which said master knows to be totally untrue. That when the several cases of merchandise were shipped on board said vessel, they were marked as herein stated, and the receipt of the first officer of said bark taken therefor. That at the same time, on the 14th of November, your libellant took blank bills of lading to said master, and requested him to fill them out; he being unwell, your libellant left them on his table, said master saying he would have them made out and hand them to your libellant when he came on board the vessel,—the receipts of said first officer of said bark being the only evidence of such shipment left with your libellant. That the value of said merchandise, wearing apparel, and money so shipped, was at least five thousand dollars.

"And your libellant further shows, that your libellant offered to produce and exhibit to said master in the custom-house, on his pretending he did not know your libellant, his letter to your libellant, written at Whampoa to your libellant at Hong Kong, with the Chinese postmark thereon; also the original receipts of his first officer of said bark, for the cases of merchandise and luggage so shipped, but the said master refused to see them, or pay any attention thereto. All of which actings and doings of said master have been and are oppressive and unjust towards your libellant. That said vessel is a foreign vessel, and is now lying within the jurisdiction of this court, and as your libellant is informed and believes. carried freights on her said voyage which have not yet been paid over to the owners or their agents, to something like eight thousand dollars.

"And thereupon your libellant alleges and articulately propounds as follows: First.

That on or about November 14, 1846, your libellant shipped on board the said bark Zenobia, then lying at Whampoa, (China,) for transportation to the port and city of New York, eight cases of merchandise, duly marked and numbered, and also three other cases of luggage, with a chest of drawers, which contained the sum of $2,500; taking the receipt of the mate of said bark for said last mentioned cases. Second. That on the same day your libellant contracted with the master of said vessel to convey your libellant and his family to the city of New York, and paid the master of said bark $150, as one half of the passage-money therefor. Third. That in coming down from Hong Kong to Whampoa with said merchandise, to ship the same to the United States, your libellant incurred the expense of $40. Fourth. That after shipping said merchandise on board of said bark, and after the payment of said sum of $150 to said master, on account of the passage of your libellant and his family to New York, your libellant returned to Hong Kong for his family, under the assurance of the master of said bark that she would not sail before the first of December; and that he would advise your libellant in time of the day of sailing of said bark from Whampoa. Fifth. That on or about the 22d day of November last, your libellant received a letter from the master of said bark, dated the 19th of said month, stating that he had written a letter on the 18th to your libellant, but lest it might miscarry, he repeated its contents, viz.: that he should sail from Whampoa on the 28th of November. Sixth. That on the 24th of November your libellant and his family left Hong Kong, and arrived at Whampoa on the morning of the 27th of November last, and found said bark had sailed from Whampoa the day previous, to wit, the 26th of November. Seventh. That the expense incurred by your libellant in coming down from Hong Kong to Whampoa with his family to go on board of said bark was $60; and the necessary and additional expense by reason of his detention until the sailing of the next vessel to the United States, the further sum of $64, besides the sum of $16 paid by your libellant in going to Canton to see the agents of said bark. Eighth. That the master of said bark was, on the day of the shipment of said merchandise on board of said bark by your libellant, to wit, the 14th of November last, and some days previous to the date of his letter to your libellant of the 19th of November, duly notified that said bark would sail on the 25th of November; and said master well knew that said bark would sail before the 28th of November last. Ninth. That by the misconduct of said master, your libellant and his family were, on the 26th day of November last, after the shipment of all the merchandise, money, and wearing apparel of your libellant on board of said bark, and the payment of one half their passage-money to the United States, thereby left in Whampoa wholly destitute. Tenth. That your libellant was obliged to raise $1,000, by drawing bills at an enormous rate of exchange, to wit, fifty per cent. premium. Eleventh. That your libellant was, in consequence of being so left destitute as to wearing apparel for himself and family, obliged to expend the sum of $432 for a new outfit. Twelfth. That your libellant, in securing a passage for himself and family by the first vessel from Whampoa to the United States, was obliged to pay $400 therefor. Thirteenth. That upon the arrival of your libellant in the United States in March last, before the arrival of said bark with the effects of your libellant, your libellant was obliged to effect an insurance upon his property at an expense of $61, in order to borrow a small sum for the immediate wants of his family. Fourteenth. That said bark Zenobia arrived in the port of New York on the 9th day of May last; and said master, being called upon by your libellant to refund the passage-money so paid him in Whampoa, with the money and expenses incurred by your libellant in consequence of being left in China, said master wholly refused, and set your libellant at defiance. Fifteenth. That said master, A. R. Cronstadt, after his arrival in New York with said bark, interposed every obstacle in his power, and endeavored to defeat your libellant from obtaining his merchandise and effects so shipped by said vessel, by refusing to enter the same on the manifest of the cargo of said bark with their marks and numbers; and also by refusing to enter the name of your libellant therein as the shipper of said merchandise and effects, to the great damage and injury of your libellant. Sixteenth. That the value of said merchandise, wearing apparel, and money, shipped on board of said bark by your libellant, was at least five thousand dollars.

"And your libellant therefore charges, that said breaches of the undertaking and contract of said bark Zenobia and her master, to and with your libellant, are properly cognizable and relievable in this court of maritime jurisdiction. And your libellant therefore prays the aid of this honorable court, that process maritime may issue against said bark, her tackle and apparel, as well as against her owners and all persons interested therein, pursuant to the practice of courts of admiralty and maritime jurisdiction; and that an attachment in personam may issue against said master, A. R. Cronstadt, and that said bark, her owners, etc., may be by this honorable court decreed to pay to your libellant the money paid to said master on account of said voyage, for the passage of your libellant and his family, together with the damages sustained by your libellant, and the money and expenses necessarily and properly incurred by your libellant in China, by reason of said breach of the contract and undertaking of said master and bark with your libellant, and of all loss and damages sustained by your libellant therefrom, as well

also by reason of the refusal of said master to deliver or make the proper entries of the merchandise and effects of your libellant in the custom-house of the port of New York, thereby preventing your libellant from receiving the same; and for such aid and redress against said bark, her owners, or the said A. R. Cronstadt, the master, as the court is competent to give in the premises. And that said bark, tackle and apparel, owners, and all interested in her, may be decreed also to pay to your libellant the costs of this suit. And your libellant will ever pray." (Verification.)

To the libel. as amended, A. R. Cronstadt, the master, and David Carnigie, owner and claimant, interposed separate answers. The answer of Cronstadt, the respondent, denied nearly all of the allegations of the libel, which charged any misconduct upon him. The narrative of the facts given by him was substantially as follows: On November 14, 1846, the libellant came on board the Zenobia, then making ready to sail for New York, and applied to respondent for a passage for himself and family. He stated that he was poor and unable to pay full price, and desired to work his passage in part. He said that he was a Dane, and conversed with respondent, who was also a Dane, in the Danish language, and thus interested the sympathies of respondent in his behalf, as a fellow countryman. The respondent was thus persuaded to agree to give him passage at the reduced price of $300, payable in advance. When, however, the time of payment came, the libellant represented that he had only money enough to pay one-half, and the respondent was then persuaded to accept half the money in cash, and the balance in libellant's note. The libellant thereupon sent on board several cases of merchandise, amongst which was a chest of drawers, as stated in the libel, but respondent had no knowledge of their contents. No bills of lading for this property were given, and the only receipt obtained by libellant was one which he took from the second mate, and was merely for a hat, a compass, and a tea-caddy, which were specially entrusted to the mate. In respect to the time of sailing, the respondent told libellant at the time of his taking passage, that he could not tell when he should sail, but did not expect to sail before the latter part of November, but he recommended libellant to get his family down and on board as soon as possible. The libellant then left to go for his family, but he having been gone a long time, respondent wrote to him, urging him to return without delay, and saying that as near as he knew, the vessel would sail on or about the 28th. The vessel did not actually leave Whampoa till the 27th. The answer also denied having done anything to delay or thwart the libellant in procuring his property to be passed through the custom-house. The answer insisted that the claim of the libellant that he had $2.500 in specie in his chest of drawers, showed that the contract of affreightment was procured through false and fraudulent pretences of poverty, and for this reason respondent contended that libellant was entitled to no remedy upon the contract. He also insisted that the contract was a personal one, and not within the jurisdiction of the court. The answer of the claimant, David Carnigie, set up substantially the same matters of defence with that of Cronstadt. The details of the testimony given at the hearing are omitted,—the interest of the case lying in the points of law ruled by the court.

Abner Benedict, for libellant.

Francis B. Cutting, for claimant and respondent.

BETTS, District Judge. The libellant seeks to recover, in this action, for several distinct items of damage connected with a breach of a contract of affreightment, entered into between himself and the master of the Zenobia, and which, as he charges, was wilfully violated by the latter. The allegations of damage are, many of them, distinct in their nature, and require to be separately considered.

The libellant shipped on board of the Zenobia, then lying at Whampoa, China, for transportation to this port, sundry cases of merchandise. On the arrival of the vessel here, it was found that the articles contained in a trunk belonging to libellant had become injured by being wet. The other cases passed into the custom-house, and by the neglect of the master to make the proper entries upon the ship's manifest, the libellant was greatly delayed in obtaining their delivery to him. The vessel is undoubtedly responsible to the libellant for the safe carriage and delivery of the goods laden by him on board her, and he is entitled to recover damages for a breach of duty in this respect.

As regards the injury to the articles contained in the trunk, the defence is, that the damage was occasioned by the perils of the sea. But there being no bill of lading in the case. exempting the vessel from liability for losses arising from perils of the sea, it becomes necessary for the claimants to prove that the injury arose from supernatural causes. In other words, the liability of the ship, as a common carrier, can only be discharged by showing that the loss was incurred from perils embraced within the meaning of the phrase. "the act of God." The cases are very numerous in which the attempt has been made to exempt the common carrier from this strict liability for losses occasioned by casualties not absolutely unavoidable; but the rule is uniform, and is sanctioned by authority too strong to be questioned, that to bring a disaster within the scope of the phrase, "the act of God," for the purpose of relieving the common carrier from responsibility, it is necessary to

show that it occurred independent of human action or neglect. It is only a natural and inevitable necessity, and one arising wholly above the control of human agencies, which constitutes the peril or disaster contemplated by that phrase. 2 Kent, Comm. 597. In the absence of an exemption to be gathered from the contract of affreightment, the carrier cannot excuse a loss, resulting in any degree from the influence of human means, excepting only a loss from the force exerted by a public enemy. Numerous cases upon this subject are collected and discussed in McArthur v. Sears, 21 Wend. 190. See, also, The Reeside [Case No. 11,657]; 1 Conn. 487; Story, Bailm. §§ 512, 531; Whitesides v. Russel, 8 Watts &-S. 44. Any act of omission, neglect, or carelessness on the part of the master or crew, contributing to the loss, takes away the protection of the defence here relied upon.

It is in proof, on the part of the libellant, that the trunk was stored in the long-boat, and that such storage was not proper for freight of that description. The vessel must therefore be held responsible for the injury received by the contents of the trunk.

There is also a demand for damages because of the misconduct of the master in the preparation of his manifest, and in thwarting the libellant in his efforts to obtain the delivery of his goods in this port. How far these particulars if proved with all the aggravations charged in the libel, might afford substantive ground of action, I do not now examine or decide. The testimony does not present a case requiring such decision. But the delay of the master in presenting a proper manifest, so that the libellant could pass his property through the custom-house, is a neglect of his duty as master; and damages naturally incident to any failure of duty towards the shipment on the part of the master, fall properly within the responsibility of the vessel. She is bound for the safe carriage and due delivery of the cargo; and acts of misconduct by the master, which are injurious in either respect to the shipper, will subject her to make adequate recompense to the freighter. The liability of the vessel upon this score is, however, limited to damages for the act or neglect of the master in his capacity as such. For any tortious endeavor on his part to prevent the libellant from recovering possession of his goods, she is not responsible; nor would such acts of the master, committed at this port, and in command of the ship, fall within the jurisdiction of the court, in an action against him personally.

It will be difficult to fix upon a measure of damages in that respect which will meet the particular merits of the case yet rest on principles of general application. The actual damage to the owner of goods may be very great, yet when the damage to a consderable degree is merely consequential, it cannot be charged in its entirety upon the vessel as the immediate and proximate cause of it. If the goods were subject to freight, I should be inclined to regard a loss from the misconduct of the master in withholding their delivery, a proper counter-claim against the freight; but these goods being the personal baggage of libellant and family, and not chargeable with freight, I think some compensation awarded by way of demurrage as it were, will be the appropriate mode of satisfaction. The master made oath before the deputy collector to the manifest, on May 8th, the libellant being then here, seeking the delivery of his property; and did not make the proper baggage entry thereon, so that the goods could be obtained by the libellant until June 15th. This act, although importing wilful misconduct on the part of the master, was yet within the scope of his authority, and accordingly the vessel stands chargeable with its consequences. Abb. Shipp. 152, 158. I regard the delay to the owner in obtaining his goods, and his necessary expense in procuring them from the custom-house, as imposing on him a loss or damage amounting to $2 per day; and without a more satisfactory measure of compensation, I shall adopt that as a reasonable remuneration, and allow him the sum of $74, because of the wrongful nondelivery of his property pursuant to the shipping contract.

The libellant charges that a chest of drawers which was shipped by him amongst the cases of merchandise above referred to, contained the sum of twenty-five hundred dollars in specie, and that this money was missing from the chest when delivered to him in this port. There is no evidence, however, to support either of these averments; and the claimant proves, by the testimony of one of the mates of the vessel, that the libellant himself had access to the chest of drawers while it was yet on board the vessel; that he took a bundle from the furniture previous to its being landed, and that no complaint was then made by him of the loss of any money. He establishes no right to recovery on this part of his claim.

The libel avers that the libellant contracted with the master of the Zenobia to convey him and his family from Whampoa to this port; that he paid the master of the bark in advance $150, being one half of the passage money, and that the vessel sailed without him, previous to the time appointed and without his knowledge. I think the libellant has established this charge, and is entitled to recover against the bark his damages for this breach of contract by the master, to transport him and his family as passengers. This contract was one which it was competent for the master to make in the employment of the ship, and became binding on the vessel. Abb. Shipp. 160; 3 Kent, Comm. 162. The vessel is liable on this contract for the $150 paid the master in advance in China, upon the grounds stated

in the former decision of the court in this cause, in July last. [Case No. 18,208.]

The libellant came down from his residence at Hong Kong to Whampoa, in season to embark on the Zenobia on November 28th, which was her appointed day of sailing, but found she had already left. His expenses incurred in coming down to Whampoa are stated at $60, and his further expenses incurred through his detention at Whampoa, at $64, besides $16 paid in going to Canton to confer with the agents of the bark respecting her departure. There is no ground upon which the libellant can claim to recover the cost of his passage from Hong Kong to Whampoa, as he must necessarily have made that voyage, whether he came home in the Zenobia or the Rainbow. But the vessel is chargeable with the expenses of the libellant incurred in waiting at Whampoa, after the Zenobia had left, for the sailing of a vessel in which he might take passage to the United States. The evidence shows that $64 is a moderate allowance for those expenses, and that sum should accordingly be allowed.

It is not necessary to discuss the question of the liability of the vessel or master to the libellant for the disbursements said to have been made at Canton in a premium for the loan alleged in the libel to have been paid, or for the new supply of clothing for himself and family there purchased. No proof is given that the libellant made any such disbursements, and the court cannot presume them from any supposed necessity, arising from the circumstances of the case.

I consider the bark equitably liable because of the violation of the contract to transport the libellant and his family to this port, in damages equal to the cost of his passage to this country in the Rainbow, upon the general grounds upon which I have already placed his right to recover back the advance passage-money. That disbursement is fairly chargeable upon the ship as a portion of the damages recoverable by libellant for the breach of the passage contract. The sum of $400 paid by him is proved to be below the usual and customary rate of charge for such passages, and that sum he is entitled to recover.

A reference must necessarily be had to a commissioner, to ascertain the amount of injury to the clothes contained in the trunk, by wetting, unless the parties can agree to the amount of such damage.

It is proper to remark, in respect to the deposition of Captain Cronstadt, the respondent, which was offered in the cause, that even if it were legally admissible, it would not in my estimation, displace the other evidence in the cause, nor vindicate his conduct. But he stands a party to the suit, being prosecuted in personam, and subject to a decree against himself for all the liabilities of the vessel in this behalf; and the case of Bridges v. Armour, 5 How. [46 U. S.] 91, seems to settle the point that he is an incompetent witness in the cause.

The decree will accordingly be for the libellant, as above, and for full costs of suit.