Bartley, J.
This suit was instituted to recover damages for the loss of certain goods intrusted to the defendants as common carriers on the Muskingum river. The declaration sets forth an undertaking by the defendants in ordinary and general terms as common carriers and owners of the steamboat “Newark,” to transport the goods and merchandise of the plaintiff from Marietta to Zanesville; avers the defendants’ failure to deliver the goods according to his understanding, and their loss on the way, by the defendants’ negligence.
*The defendants pleaded the general issue.
It appears that on the trial of the cause in the district court, the plaintiff, after giving evidence tending to prove that the defendants were common carriers between Marietta and Zanesville, and owners of the steamboat “Newark,” offered in evidence the bill of lading, which contained the terms' of a special contract between the parties, for the transportation of the goods in question, from Marietta to Zanesville, on said steamboat, specially excepting the liability of the defendants for the dangers of the river, fire, and unavoidable acci *116 dents. But the plaintiff offered no evidence to show “the loss of the goods within the terms of the special contract.” The court directed the plaintiff to be nonsuited. The plaintiff excepted to the zmling of the court, and also moved for a new tz’ial. And the cause was reserved for decision here upon the questions z-aised by the motion for new trial.
The ruling of the couz’t below is questionable on two grounds. The first has relatiozz to a question of variance between the proof and the declaz’ation as to the contract between the parties; and the second, to the sufficiency of the proof of loss of the goods
The declaratiozz sets out nothing but a general or ordinary engagement on behalf of the defendants as common carriers. The evidence offered is that of a contract containing a special exemptiozz of the liability of the defendants for any loss which may az’ise from “ the damage of the river, fire, and unavoidable accident.” It is requisite that a declaration on a contract should set out the contract truly, either in tezuns or by its legal import. If the defendants had the right to make this special exceptiozz to their ordinary liability as common carriers, it became a material stipulation in the contract, and as such became an essential part of the description of the contract iiz the declaration. The materiality, therefore, of this special provision in the contract, involves the much contested question", whether the common carrier has the right"to limit his common-law liability by special agreement.
*This is a question of great and increasing importance, azzd requires the most careful consideration. The different branches of business connected with the various modes of transportation have been vastly extended. And not only the facilities and means of public conveyance, but also the actual amount of transportation, have beezz so greatly increased, that the laws relating to the duties azzd liabilities of common carriers have acquired far more extensive application than formerly. And it is of the utmost importance that they should be settled with certainty and a just regard to the multiplied azzd still growing interests to which they relate.
It has been well settled, both in England and izz this country, for many years, that a common carrier is liable for all losses which do not fall within the excepted cases of the act of God or the public enemy. The ordinary bailee for hire or private carrier is liable only for neglect of ordinary caz'e; but the common carrier is held to a higher degree of diligence, ■ and is not only answerable for *117 losses arising from slight neglect, but is, in one sense, an insurer of the property intrusted to him, being responsible for losses by accident or mistake from whatever cause arising, the acts of God and the public enemy only excepted. The loss of, or damage done to, property intrusted to the common carrier, is of itself sufficient proof of negligence; the maxim of the law being, that everything is negligence which the law does not excuse. The peculiar duty and high responsibility which has been imposed upon the ■common carrier, arise from the public character of his employment, the extensive control he exercises over the property of others, and the facilities which he usually has for securing impunity for an abuse of his trust. 2 Kent’s Com. 597. •
But whether the common carrier can limit this liability by special ■agreement, and if so, to what extent, does not seem to be so well settled, and there is much conflict in the decisions upon the subject in England as well as in this country. It was held by the Supreme Court of New York, in Gould v. Hill, 2 Hill, 5 Rep. 625, that the common carrier is restrained *by public policy from limiting his liability by express agreement. And this doctrine has been recognized, at least, as law by the courts of several of the other states. Fish, etc. v. Ross, 2 Kelly (Geo.), 349. Thomas v. Boston and Providence Railroad Co., 10 Met. (Mass.) 479; And in the case of Jones v. Voorhees, 10 Ohio, 145, this doctrine was also recognized in the Supreme Court of this state ; but that decision went no further than to decide that the proprietors of stage-coaches are common carriers, and, as such, can not limit their responsibility by ■actual notice to the traveler, that his baggage is at his own risk. The principle really settled in this case we feel no disposition to disturb, but some of the language used in the opinion needs qualification.
Many of the questions which have engaged the attention of ■courts touching this subject, have arisen upon alleged implied, contracts, or rather upon the validity and effect of written or printed notices given by common carriers in the course of their public employment, announcing a limitation upon the carrier’s liability for property intrusted to him. The validity of such notices was not recognized in W estminster Hall until the decision of the ease of Nicholson v. Willan, 5 East, 507, in the year 1804. But the doctrine became gradually and firmly established in England, until Parliament at length interfered, and by statutory provision con *118 trolled the effect of these notices, and restored tire operation of the common law. Stat. 1 Will. 4, ch. 68. The adjudications in this-country have generally shown a firm adherence to the-strictness of the common-law rule in regard to the responsibility of common carriers, and an inclination to restrict, and in some of the states to-invalidate, the effect of notices upon that liability. It is held, in Pennsylvania, that although a common carrier may limit his responsibility by a general notice, yet the terms of the notice must be clear and explicit, and the person with whom the carrier deals must be fully informed of the terms and effect of it. Camden and Amboy Railroad Co. v. Baldauf, 16 Penn. St. 67. But in Now York it is settled that the common carrier can not ^restrict his liability by a general notice, even though the notice be clearly brought to the knowledge of the owner. Cole v. Goodwin, 19 Wend. 251; Hollister v. Nowlan, Ib. 235; Wells v. The Steam Navigation Co., 2 Comst. 204. This rale, which has been adopted also in several other states, and by the Supreme Court of the United States, in the case of the New Jersey Steam Navigation Company v. The Merchants’ Bank of Boston, 6 How. 344, fully sustains the principle decided in Ohio in the case of Jones v. Voorhees, so far as it relates to the effect of the notice upon the carrier’s liability.
The ground upon which the validity or effect of a notice to restrict the liability of a common carrier is sought to be maintained, is that it amounts to a proposal of special terms in the engagement, and that the assent of the owner or employer will be presumed or implied. This reason'is noticed by Mr. Justice Nelson in the opinion in the case of New Jersey Steam Navigation Co. v. Merchants’ Bank, in the following language : “ But admitting the right thus-to restrict his obligation, it by no means follows that he can do so by any act of his own. He is in the exercise of a sort of public office, and has public duties to perform, from which he should not be permitted to exonerate himself without the assent of the parties concerned. And this is not to be implied or inferred from a general notice to the public, limiting his obligation, which may or may not be assented to. He is bound to receive and carry all the goods offered for transportation, subject to all the responsibilities incident to his employment, and is liable to an action in case of refusal. And we agree with the court in the case of Hollister v. Nowlan, that, if any implication is to be indulged from the deliv *119 ery of the goods under the general notice, it is as strong that the owner intended to insist upon his rights, and the duties of the carrier, as it is that he assented to their qualification.”
In a matter of this nature, we think that the assent of the owner or employer is not to be implied, and can not be reasonably presumed from a notice, in the absence of proof of an express agreement. And we hold it to be settled in Ohio *at least, that the common carrier can not restrict his liability by notice, verbal, written, or printed, even when brought to the knowledge of the owner or employer.
But the question recurs, where an express agreement between the parties actually exists, restricting the liability of the common carrier, is it wholly invalid? Upon what- principle can it be rendered invalid ? • There is no incapacity in the parties to contract; neither is there any criminal or immoral element entering into the nature of the contract. The particular transaction to which it relates, involving simply rights of property;and the service of the safe custody, carriage, and delivery of the goods, contains no element of illegality, and does not, perhaps so far as that particular instance is concerned, inj uriously affect the public interests any more than the ordinary engagement of an insurer of goods, to which, in one respect, the engagement of the common carrier is analogous. But it is said that a stipulated restriction upon the common carrier’s liability contravenes a principle of public policy —that the common carrier is in the exercise of a public employment, and that to allow him to stipulate for his own carelessness, or by special contract to provide impunity for his own misconduct or omissions of duty, would encourage negligence and open a wide door to fraud, in a business extensively affecting the commerce and interests of the community at large.
The liability of the common carrier, however, extends beyond that of losses by his own default or omissions of duty. He is liable for losses by accident, mistake, and numerous unavoidable occurrences, not falling within either of the two excepted perils, and against which it is not within the reach of human vigilance or foresight to provide. If the loss happen by the wrongful act of a third person ; by an accidental fire not caused by lightning; by the agency of the propelling power in a steamship; by mistaking a light; by the goods being taken by robbers, or destroyed by a mob through force, which neither the carrier nor his. agents could resist; or *120 any other of the many unavoidable circumstances *not within the two common-law exceptions, the carrier is held liable. In the case of Riley v. Horne, 5 Bing. 217, Mr. Chief Justice Best, in discussing the extent of the common carrier’s liability, uses the following forcible language: “ When goods are delivered to a carrier they are usually no longer under the eye of the owner; he seldom follows or sends any servant with them to the place of their destination. If they should bo lost or injured by the grossest negligence of the carrier or his soxwants, or stolen by them or by thieves in collusion with them, the owner would be unable to prove either of these causes of loss. His witnesses must be the-carrier’s servants; and they, knowing that they could not be contradicted, would excuse their masters and themselves. To give due security to property, the law has therefore added to that responsibility of a carrier, which immediately arises out of his contract to carry for a reward, namely, that of taking all reasonable care of it, the responsibility of an insurer. From his liability as an insurer the carrier is only to be relieved by two things, both so well known to all the country, when they happen, that no person would be so rash as to attempt to prove that they had happened when they had not; namely, the act of God and the lung’s enemies.”
The liabilities of a common carrier may be distinguished into two distinct classes, according to their nature. The one a liability for losses by neglect on the part of the carrier or his agents, which is the liability of a bailee, arising from omission of duty. The other, a liability for losses by accident, mistake, or other unavoidable occurrence, without any actual fault on the jxart of the carrier, which is the liability of an insurer, and founded upon a principle of the common law. No principle of public policy would seem to be contravened by a special contract restricting the liability of the common carrier from losses not arising from any neglect or fault on his part. Here he would not be stipulating for his own carelessness, or providing impunity for misconduct or any omission of duty on his part. And it wouldappear reasonable that he should be allowed the means of protection to himself ^against misfortune, by limiting his liability as an insurer. Besides, the owner may prefer selecting his own insurer. The carrier may bo unable to respond in case of loss. And if no restriction of this kind on his liability can be made by agreement, the owner would be subjected to the necessity of paying the carrier for his risk as insurer, *121 and also for paying a premium to another for protection against-the same loss for which the carrier is liable.
The right of the common carrier to restrict his common-law liability by special agreement, is founded upon sound reason, and is fully sustained by the Supreme Court of the United States, in the case of the New Jersey Steam Navigation Company v. Merchants’ Bank, 6 How. And the same doctrine is sanctioned by the greater weight of. authority in this country and also in England.
The contract of the common carrier, therefore, restricting his liability, is not invalidated by public policy, but merely limited in its operation. The common carrier has the right to restrict his common-law liability by special contract; and this extends to all losses not arising from his own neglect or omission of duty. Ho can not, however, protect himself by contract from losses occasioned by his own fault. He exercises a public employment, and diligence and good faith in the discharge of his duties are essential to the public interests. He is held to extraordinary diligence—that is, that degree of diligence which very careful and prudent men take of their own affairs. And he is responsible for all losses arising from a neglect of that high degree of diligence enjoined on him by his public employment. And public policy forbids that he should be relieved by special agreement from that degree of diligence and fidelity which the law has exacted in the discharge of his duties. All public agents are held to this high degree of diligence in the discharge of their trusts; and they are never allowed to contract for a less degree of diligence and fidelity than that which the law imposes. Any such contract would be regarded as illegal or against public policy, and therefore void. If a public *agent can, by special contract, provide that he shall be held to, or made responsible only for ordinary diligence in the discharge of his duties, he can of course go further, and provide that he shall not be answerable for more than slight diligence, or indeed for any degree of neglect, or the consequences of any misconduct in the performance of his task. The law fixes the degree of diligence required, of the common carrier as a public agent, and this he can not change by special contract. The proposition that he could do so, would imply that a public agent could contract in consideration of his own future malfeasance or nonfeasance in the performance of his trust. The degree of diligence required by law of the *122 common carrier, is a matter over which he has no control, and in which the public is interested.
It has been held, that where the liability of a common carrier has been restricted by agreement, he is to be regarded, in respect to that particular transaction, as not in the exercise of his public employment, but as an ordinary bailee for hire, and therefore liable only for a neglect of ordinary diligence. The reason upon which this opinion rests is not satisfactory. It is not true that the character of the employment is changed by such contract, and the carrier is not and can not in fact be regarded as a mere private bailee for hire. He is still a common carrier, and not at liberty to refuse to perform his duties as such, even in regard to the particular transaction to which the contract relates.
In consequence of the nature of his employment, and its connection with the public interests, the common carrier is held to a higher degree of diligence than the private carrier. And he can not be allowed, with proper regard for the public safety, to relieve himself to any extent from that care and diligence which has been enjoined upon him from considerations of groat public interest. We are unanimous in holding that the common carrier can not relievo himself to any extent by special contract, from losses occasioned by his own neglect; and that, although he may, by contract, restrict his liability as an insurer, yet that he can not stipulate for a less *degroe of care and diligence, in the discharge of his duty, than that which pertains to his peculiar trust as a bailee.
The special stipulation in the contract offered in evidence in this case was therefore valid and material, and should have been set out in the declaration as part of the contract. Upon this ground there was a fatal variance between the proof and the declaration.
2. On the subject of the sufficiency of the proof of the loss of the goods in this case, the facts do not appear as fully as desirable. It seems, however, that the delivery of the goods to the defendants, and the non-delivery of the same at the place of destination, were not in dispute, and were admitted by the parties on the trial. And by the statement that “the plaintiff offered no evidence to show the loss of the goods within the terms of the special contract,” wc understand is meant that he offered no evidence to show that the loss did not fall within the special exceptions to the defendants’ liability in the contract. The question which arises, therefore, is, whether it is incumbent on the owner of the goods, in case of ex *123 ceptions to the liability of the common carrier by special contract, to prove that the loss did not fall within the exceptions.
The rule of evidence which is applicable here has been very clearly and definitely settled. Proof that goods 'intrusted to a common carrier have never been delivered, either to the bailor or to the consignee, is prima facie evidence of loss by negligence, and sufficient to charge the carrier. In all cases of loss, the onus probancli is on the carrier to bring his liability within any special exemption; for it is said that, prima facie, the law imposes the obligation of safety on him. Angelí on the Daws of Carriers, sec. 202; Story on Bailments, sec.' 529. Mr. Grecnleaf, in his work on Evidence, vol. 2, sec. 219, says: “ In all cases of loss by a common carrier, the burden of proof is on him to show that the loss was occasioned by the act of God, or by public enemies. And if the acceptance of the goods was special, the burden of proof is still on the carrier, to show, not only that the cause of the *loss was within the terms of the exception, but also that there was, on his part, no negligence or want of due care. Thus, where goods were delivered on board a steamboat, and the bill of lading contained an exception of ‘the dangers of the river,’ and the loss was occasioned by the boat’s striking on a sunken rock, it was hold incumbent on the carrier to prove that due diligence and proper skill' were used to avoid the accident.” This doctrine is founded on sound reason, and fully sustained by authority. Whiteside v. Russell, 8 Watts & Serg. 44.
In this case, therefore, the burden of showing the loss to have been produced by a cause falling within the exceptions rested upon the defendants. The non-delivery of the goods by the defendants according to the bailment was sufficient prima facie evidence on the part of the plaintiff.
Upon the ground of variance, however, between the proof and the declaration, the district court was correct in its ruling. The-motion for a new trial is therefore overruled.