## THE SEVEN SONS.

### McLAUGHLIN v. THE SEVEN SONS.

(*District Court, W. D. Pennsylvania.* October Term, 1885.)

TOWAGE—NEGLIGENCE—PRESUMPTION.
 Where a flat-boat, when delivered under a towing contract into the custody of a tow-boat, was in good order, but when it reached the port of destination was in a broken and sinking condition, and the owner did not accompany the flat-boat either personally or by agent, it is the duty of those owning or navigating the tow-boat to show how the injury occurred, and, in the absence of explanation or proof on that subject, negligence will be presumed, and damages decreed against the tow-boat.

In Admiralty.
*Burleigh & Harbison*, for libelant.
*H. H. Marcey*, for respondents.

ACHESON, J. The owners of the tow-boat Seven Sons undertook to tow the libelant's loaded flat-boat down the Monongahela river, from Brownsville to Pittsburgh. The flat-boat was in good order when the tow-boat took it in charge, but when it reached the place of destination

it was in a sinking condition, there being then a serious break in its bottom. One of the owners of the tow-boat stated to the libelant "that they had hurt the flat in landing at Jack Jones' landing;" but, it would seem, no further explanation was given. The libelant was not with the flatboat, nor had he any agent with it at the time it was injured. There was a good boating stage of water during the trip. These facts the libelant proved, and also the amount of his loss.

Besides the pilot, the tow-boat had a full crew of hands, and one of her owners was on her during the trip. Of these the pilot only was examined. He testified as to the care taken to keep the flat-boat afloat after it was found to be leaking, but he gave no account of the manner in which it was injured, nor of the degree of care observed by the towboat. As the case stands, there is no evidence to show the cause or manner of the accident, or what precautions were taken to avoid it, although these are matters peculiarly within the knowledge of the owners of the tow-boat and their employes. Under the proofs, then, what should be the judgment of the court?

The owners of a tow-boat, it is true, are not common carriers, and they are responsible only for ordinary care, skill, and diligence. But a bailee subject to that degree of responsibility only, is yet bound to show how the goods intrusted to him were lost or damaged, before he can throw upon the bailor the burden of proof of negligence. *Clark* v. *Spence*, 10 Watts, 335; *Beckman* v. *Shouse*, 5 Rawle, 179; *Logan* v. *Mathews*, 6 Pa. St. 417. Now, here, the owners of the tow-boat were bailees for hire of the flat-boat. Again, it has been held that, under a bill of lading excepting "the dangers of the river," it is not enough for the carrier to show that his steam-boat run upon a stone, and knocked a hole in her bottom, but he must also prove that due diligence and proper skill were used to avoid the disaster, and that it was unavoidable; and this, because the facts are peculiarly within the knowledge of himself and his agents. *Whitesides* v. *Russell*, 8 Watts & S. 44. In the absence, then, of all testimony as to the manner in which the libelant's flat-boat was injured, or acquitting the tow-boat of blame, negligence is justly to be presumed. *Humphreys* v. *Reed*, 6 Whart. 444.

Let a decree be drawn in favor of the libelant for $70, the amount paid for repairs, and $5.40, the cost of pumping, with interest from February 5, 1885, and costs of suit.