Price *v.* Hartshorn.

[St. Lawrence General Term, October 4, 1865. *Bockes, James* and *Rosekrans,* Justices.]

———o-o-•———

## Price *vs.* Hartshorn.

It is well settled that a common carrier, according to his common law liability, is an insurer of the property received by him for transportation, against all loss and damage happening thereto while under his control, unless occasioned by the act of God or the public enemy.

With this exception, the common carrier warrants the safe delivery of the property entrusted to him, against all contingencies.

Great storms are beyond the control of human agency, and loss and damage occasioned thereby are excused as being the act of God.

Where a carrier by water is compelled by stress of weather to throw overboard a part of the cargo, in order to save the vessel and the balance of the cargo, from destruction, he is not responsible for the loss, according to the rules of the common law, in the absence of a special contract increasing his general liability.

The ordinary common law liability of a common carrier may be limited or qualified by special agreement.

Price *v.* Hartshorn.

So a carrier may, by express contract, assume and take upon himself *all perils* of navigation, including those attendant upon storms and tempests. And in that case he will become, by his agreement, an insurer of the property against those perils.

Where a carrier, by the bills of lading, agreed to deliver the property at the place of destination without delay; damage or deficiency in quantity specified, if any, to be deducted from the freight, by the consignee; *Held* that the carrier did not by this contract increase his ordinary common law liability, and become the insurer of the property, while under his control, against all possible contingencies. And that he was excused from delivering that part of the cargo which was destroyed by inevitable necessity. But that the carrier could recover freight for only that portion of the cargo delivered. That as to the part destroyed, the owner must lose the goods, and the carrier the freight.

IN October, 1862, the plaintiff, as master of a canal boat called the *Mankato*, received at St. Johns, Canada East, from one Theodore Arpine, 5749 39-48 bushels of barley, consigned to the defendant in New York; for which he gave two bills of lading, one for 4000 and the other for 1748 39-48 bushels. The one for 4000 bushels was in this form:

"*St. Johns, Oct.* 18, 1862.

Shipped by Geo. H. Taylor, on board the boat Mankato, of West Port, whereof S. W. Price is master, and consigned to Richard Hartshorn, the following property, in good order, to be delivered in like good order, by count, measure or weight, in the customary way (weight calculated by average or otherwise,) at the place of destination, as consigned, without delay; damage or deficiency in quantity specified, if any, to be deducted from charges by consignees. Freight payable on due delivery, at the rate of eleven cents to New York.

The cargo named in this bill is not for sale, and any person buying or selling any portion of it will be liable to criminal prosecution.                (Signed in triplicate.)

(4,000.)   Four thousand bushels of barley of forty-eight pounds.                                S. W. PRICE.

Consigned to R. HARTSHORN, New York.

W. R. JILLSON. 1*st Cl'k.*"

The other bill of lading was in a similar form. A portion of the barley was put in bins on deck, according to the usage of canal boats running through Lake Champlain, the shipper being present and not objecting, when the boat was loaded. The boat left St Johns on the 18th of October, 1862, in the tow of the steamboat Ethan Allen. On the 21st of October, a violent storm arose. Some boats in the tow broke loose, two were sunk, and all were in imminent danger; and the plaintiff, in order to save his boat and the residue of the cargo from total loss by sinking, was obliged to throw overboard a portion of the barley stored on deck. The residue of the cargo, amounting to 4586 30-48 bushels, was carried through and delivered to, and received by the defendant in New York. The cause was tried before a referee, who found that the plaintiff was entitled to recover $579.59, being the freight on the quantity delivered, at the agreed price per bushel, and interest from the time of delivery. From the judgment entered on the referee's report, the defendant appealed.

*Wait & Reynolds,* for the appellant. I. by the express terms of the *special contract* between the parties, the plaintiff undertook and agreed to transport from St. Johns to New York, and deliver to the defendant in the latter city the whole amount of barley shipped; and the conveyance and delivery of the same at the place of destination was a condition precedent to the plaintiff's right to recover for the freight. This condition the plaintiff failed to perform. The freight was payable on due delivery. The plaintiff threw overboard 1,243 bushels, and only delivered the remainder to the defendant. The contract between the parties is in its nature entire, and nothing but its complete performance on the part of the plaintiff could subject the defendant to a liabil- to pay any freight. The delivery of a part does not entitle the plaintiff to recover. (*Phelps* v. *Williamson,* 5 *Sandf.*

578.) The charter party or bill of lading is an instrument, *inter partes.*

II. It does not appear that the loss of the barley happened from the act of God or inevitable accident. But on the contrary, it appears the loss occurred in consequence of the carelessness of the plaintiff, in overloading his boat. (*Story on Bailment,* § 413.) The other boats in the tow which had on but a canal boat load met with no loss. And if the plaintiff had put no more than a canal boat load on, there would have been no loss. It is shown that the plaintiff contributed to the loss by his carelessness and imprudence, if it was not wholly occasioned thereby.

III. Under the contract between the parties, the act of God, or inevitable accident, furnishes no excuse for its breach or non-performance. (*a.*) Where there is no special contract as to the liability of a common carrier of property, he is responsible for all loss or damage, except that which is caused by the act of God or the public enemy. He can not limit his liability by notice, even if it be brought to the knowledge of the owner. But common carriers may *limit* or *increase* their liability by an express agreement with the owner. (*Dorr* v. *New Jersey Navigation Co.,* 1 *Kern.* 485.) Justice Parker, in giving the opinion of the court in that case, says, the question distinctly presented for decision is, whether it is competent for the carrier and owner, by an *agreement* between themselves, to establish conditions of liability different from those cast by law upon a common carrier. After reviewing the decisions on the subject, and commenting upon and disapproving of the doctrine laid down in *Gould* v. *Hill,* (2 *Hill,* 623,) the learned judge says : "Upon principle, it seems to me no good reason can be assigned why the parties may not make such a contract as they please. It is not a matter affecting the public interest. No one but the parties can be the losers, and it is only deciding by agreement which shall take the risk of loss," &c.

It is enough that the law, declares the liability where the

Price *v.* Hartshorn.

parties have said nothing on the subject.    But if the parties will be better satisfied to deal on different terms, they ought not to be prevented from doing so.

Again, page 493, the judge says : " When a special contract is made, the relations of the parties are changed, but no established rule of law is changed or interfered with.    It only makes a case to be governed by a different rule."

The same doctrine, that is, that it is competent for the parties to contract on any terms they may think proper, is held in *Phelps* v. *Williamson,* (5 *Sandf.* 578, 584.)    By the contract between the parties in this case, the plaintiff undertook and agreed to deliver to the defendant, in New- York, the amount of barley shipped.    Damages or deficiency in quantity specified, to be deducted from charges by consignee (the defendant.)    Freight payable on due delivery.    The undertaking on the part of the plaintiff is absolute and unconditional.    Unlike most bills of lading, it does not contain a clause "excepting the dangers and perils of the navigation."

But any *damage* to the barley shipped, or any *deficiency* in quantity delivered, no matter from what cause or under what circumstances such damage or deficiency arose, is, by the terms of the contract, to be deducted from the charges for freight.    In *Phelps* v. *Williamson,* cited above, the bill of lading contained a clause expressly excepting the perils of the lake.    The effect of such clause is to exempt the carrier from liability to pay for the cargo when lost through the dangers of the sea.    (5 *Sandf.* 578.)    But in the agreement in this case, there is nothing of the kind; no such clause was inserted, and no such contract was made.    It is an absolute and unqualified agreement by the plaintiff, to deliver the barley in New York.    It has been seen by the authorities, that it was competent for the parties to enter into such a contract, and that the courts will enforce it.    If it be conceded, therefore, that the loss happened from inevitable accident, or act of God, the plaintiff must, notwithstanding, answer for

the damages for his non-performance, and in this case he is not only not entitled to any freight on the barley thrown overboard, but he is answerable for the full ·value thereof. Where a party engages unconditionally by express contract to do an act, performance is not excused by inevitable accident, or other unforeseen contingency not within his contract, because he might have provided against it by contract. When the law creates a duty, the party is excused if it becomes impossible to perform; but when he takes the charge upon himself by his own special agreement, if the thing *becomes impossible* to perform, he is answerable in damages. (*Platt on Covenants,* 582. *Story on Contracts,* § 668.)

It is a well settled rule of law that, where a party by his own contract, absolutely engages to do an act, it is deemed to be his own fault and folly that he did not thereby expressly provide against contingencies, and exempt himself from responsibility in certain events; and in such a case, therefore, that is, in the instance of an absolute and general contract, the performance is not excused by an inevitable accident or other contingency, although not foreseen by or within the contract of the party. (2 *Kern.* 99, 115, *and cases there cited.*)

IV. Parol evidence is inadmissible for the purpose of changing or qualifying the effect of the bill of lading, or contradicting the same. The referee erred in receiving such testimony. The parties are supposed to have written out all that they deemed necessary to give full expression to their intention. (*White* v. *Van Kirk,* 25 *Barb.* 18.) All previous agreements and stipulations are merged in the contract. In the language of a learned writer: "The parties constitute the writing to be the only outward and visible expression of their meaning, and no other words are to be added to it or substituted in its stead." (1 *Greenl. Ev. p.* 277.) The only object of reducing the contract to writing is, that the written instrument, taking the place of all other testi-

mony, shall become the sole witness to declare what has, in fact, been agreed upon between the parties.

V. The value of the deficiency of barley, the amount thrown overboard, (1,243 bushels,) greatly exceeded the plaintiff's claim for freight; and as the defendant, by the terms of the contract, had the right to apply the freight in payment for and satisfaction of such deficiency, *pro tanto,* and did so apply the same, thereby extinguishing the plaintiff's claim, there was nothing due and owing from the defendant to the plaintiff on account thereof at the time of the commencement of this action. The defendant had no claim whatever for freight, as the deficiency was greater than the amount thereof, and by the express terms of the contract, the defendant had the right to withhold the same, to be applied against or upon such damage or deficiency.

VI. The defendant is entitled to judgment, under the contract between the parties, for the full value of the barley thrown overboard, after deducting therefrom the freight on the amount of barley actually delivered. The amount thrown overboard was $1,243\frac{9}{48}$ bushels. The value $1.50 per bushel in New York; $1.25 to $1.30 in St. Johns.

*Hand & Hale,* for the respondent. I. The barley thrown overboard in order to save the boat and residue of the cargo from total loss by a violent storm, was lost by the "act of God." (*Story on Bailments,* §§ 525, 531. *Gravesend Barge case,* 1 *Rolle R.* 79, *pl.* 23. *Bird* v. *Astcock,* 2 *Bulst.* 280. *Cowen, J. in McArthur* v. *Sears,* 21 *Wend.* 190, 195.)

II. The delivery of the whole cargo was not a condition precedent to the right of freight. The freight was to be paid *by the bushel.* And in case of loss of a portion from justifiable cause, freight can still be recovered on the part delivered and accepted. (*Abbott on Shipping,* 529, [434.] *Frith* v. *Barker,* 2 *John.* 327. *The Brig Collenberg,* 1 *Black.* 170. *Addison on Cont.* 481. *Ritchie* v. *Atkinson,* 10 *East,* 295, 310.) In this case there were two distinct contracts or bills

of lading, and one (for 4000 bushels,) was wholly fulfilled. The only question arises on the other bill of lading for 1749 37-48 bushels.

III. The plaintiff is not liable for the loss of the barley, occasioned as it was by the act of God. 1. The performance of a contract or condition is always excused when rendered impossible by act of God. (1 *Co. R.* 98 *a*. 5 *id*. 21 *b*. *Cro. Eliz.* 398. *Williams* v. *Lloyd, Jones' R.* 179. *Wood* v. *Bates, Id.* 171. *Viner Abr. title Conditions*, (*G. c.*) *pl*. 1, 19. *Story on Bailments*, § 36. *People* v. *Manning*, 8 *Cowen*, 297. *Carpenter* v. *Stevens*, 12 *Wend*. 589. *Cobb* v. *Harman*, 23 *N. Y. Rep*. 148, 150, *Lott. J. Fahy* v. *North*, 19 *Barb*. 341. *Wolfe* v. *Howes*, 24 *id*. 174. *S. C. affirmed*, 20 *N. Y. Rep*. 197. *Read* v. *Spaulding*, 5 *Bosw*. 396. *Hyland* v. *Paul*, 33 *Barb*. 241. *Jones* v. *Howe*, 9 *C. B*. 2, 19. *S. C.* 7 *Hare. Hall* v. *Wright*, 96 *Eng. C. L*. 795, *Am. note.* 3 *Kent's Com*. 293, [216.] 1 *Pars. on Cont*. 184, 185. *Williams* v. *Grant*, 1 *Conn*. 487, 492. *Crosby* v. *Fitch*, 12 *id*. 419.) 2. The cases relied upon by the appellant which hold the obligation to be absolute, and performance not excused, though some of them contain *dicta*, which taken unqualifiedly, and without reference to the facts of the case under consideration, would seem to conflict with the above proposition, do not in fact sustain the appellant's claim. They are all distinguishable from the present case; and most of them come under one or more of the following heads: (*a*.) Where the impossibilty does not arise from the act of God, but from the intervention of merely human agency. (*See McArthur* v. *Sears*, 21 *Wend*. 190.) Such was the case in *Harmony* v. *Bingham*, (2 *Kern*. 99,) and *Beebe* v. *Johnson*, (19 *Wend*. 500.) The true rule under this head is well stated by Brian, Ch. J. 4 *Hen*. VII, *pl*. 7, as quoted in *Viner Abr. tit. Conditions* [*G. C.*] *pl*. 19: "There is a diversity when a condition becomes impossible by the act of God, and where by a third person or stranger, and where by the obligor, and where by the obligee.; the first and last are sufficient excuses

Price *v.* Hartshorn.

for a forfeiture, but the second is not; for in such case the obligor has undertaken that he can rule and govern the stranger; and in the third case, it is his own act." (*See Lott, J.* 23 *N. Y. Rep.* 150.) (*b.*) Where the event relied on as an excuse, though the act of God, does not render performance *absolutely impossible*, but only expensive and difficult. So in the leading case of *Paradine* v. *Jane*, (*Al.* 26,) where it was held, that a tenant who had entered into an express and absolute covenant to repair, must perform, although the building was destroyed by the king's enemies, or by lightning; "for when the party by his own contract creates a duty or charge upon himself, he is bound to make it good *if he can*, notwithstanding any accident by irresistible necessity." (*See the case cited in Viner Abr. title Condition, I. C. pl.* 20.) And so in *Dyer* 33, *a*, where a lessee had covenanted to sustain and repair the banks of a river to prevent the water from overflowing, upon pain of forfeiture of £10, and by reason of a "great outrageous and sudden flood" the banks were destroyed; it was held (by Fitzherbert and Shelby, JJ.) that he must repair within a reasonable time, but that *he was excused from the penalty.* So in *Harmony* v. *Bingham, supra,* the court say, the defendant *might* have performed. In this case, a portion of the property having been *wholly lost,* full performance was impossible. (*c.*) Where the contract is so precise and explicit as to amount to an insurance against any possible contingency. "If a man contracts to do a certain thing before a certain time, though it becomes impossible by the act of God, this shall not excuse him, inasmuch as he hath bound himself *precisely* to do it." (*Vin. Abr. title Conditions,* (*G. C.*) *pl.* 8. *Roll. Abr. title Conditions,* (*G. C.*) *pl.* 8.) And the contract in *Harmony* v. *Bingham*, was of this kind—and so in many other cases. Here the agreement is in general terms; the plaintiff agreeing to do just what the law bound him to do as a common carrier, if there had been no express agreement; the agreement should therefore be construed to have

relation only to such liability as the law implied. (*Hyland* v. *Paul*, 33 *Barb.* 241, 245, 246. *Williams* v. *Grant*, 1 *Conn. R.* 487, 492. *Crosby* v. *Fitch*, 12 *id.* 410.) 3. The clause in the bill of lading, "damage or deficiency in quantity specified, if any, to be deducted from charges by consignees," does not impose any liability upon the plaintiff for loss by the act of God. It relates only to the time and method of settlement and the "damage or deficiency" for which a carrier, as such, is *legally liable.* (*a.*) A contract of this kind should not be expounded. unfavorably to the bailee beyond the obvious scope of its terms. (*Story on Bailments,* § 35.) The risk of casualties is never included under the general terms of a contract. (*Id.* § 37.) (*b.*) The intention of the parties is to govern ; and in the absence of an express covenant, general words like these will not be construed as an insurance against losses for which the carrier would not otherwise by liable. (*See Warner* v. *Hitchins, 5 Barb.* 666, *and cases cited. Hyland* v. *Paul, supra.*)

IV. The defendant having accepted the residue of the barley, under the bill of lading, is liable to pay the frieght. (*Abbott on Shipping,* 515, [421.] *Cock* v. *Taylor,* 13 *East,* 399. *Dongal* v. *Kemble,* 8 *Bing.* 383.). And see remarks of Johnson, Ch. J. in *Wolfe* v. *Howes,* (20 *N. Y. Rep.* 203, 204,) as to the effect of obligees receiving the benefit of a part performance of a contract.

V. The attempt of the defendant to prove a deficiency in the weight of the barley, arising after the accident, utterly failed.

VI. There are no valid exceptions on the . part of the defendant to the admission or exclusion of testimony. 1. The opinions of the witnesses as to the necessity of the *jettison* was properly admitted. The witnesses questioned were all experienced navigators and experts ; and the subject was one upon which opinions are clearly admissible. (*Sills* v. *Brown,* 9 *C. & P.* 604. *Malton* v. *Nesbit,* 1 *id.* 70, 72. *Fenwick* v. *Bell,* 1 *C. & K.* 312. *Price* v. *Powell,* 3 *Comst.* 322.) 2. The evi-

dence as to the usage on Lake Champlain, as to carrying deck loads, and also as to the shippers being present and seeing part of the cargo loaded on deck, without objection, was competent and proper. (*See* 2 *Phil. Ins.* 1282, *pp.* 72–75; *Story on Bailments,* 530, *a*; *Gould* v. *Oliver,* 4 *Bing. N. C.* 134; *Milward* v. *Hibbert,* 3 *Ad. & El. N. S.* 120; *DaCosta* v. *Edwards,* 4 *Camp.* 142; *Smith* v. *Wright,* 1 *Caines,* 43; *Lenox* v. *Union Ins. Co.,* 3 *John. Cas.* 178.) 3. The offer of the defendant to prove that other persons were jointly interested with the plaintiff in the contract for carrying the barley, was properly overruled; the defendant having waived any objection arising from a defect of parties, by omitting to take such objection by demurrer or answer. (*Code,* §§ 144, 147, 148.)

*By the Court,* BOCKES, J.  This is an appeal from a judgment in favor of the plaintiff, entered on the report of a referee.

The action was by a common carrier, to recover freight for transporting a boat load of barley from St. Johns, Canada East, to New York. The defense was that the plaintiff failed to deliver to the consignee at New York the full amount of barley received by him at St. Johns. Of the barley received by the plaintiff for transportation, at St Johns, and while *en route* through Lake Champlain, he was compelled, by stress of weather, to throw overboard 1243$\frac{2}{7}$ bushels in order to save the vessel and balance of the cargo from destruction. The loss, therefore, for which the defendant claimed to be allowed resulted from the extreme violence of the storm, and must be deemed providential — the act of God. It has been well settled for many years that a common carrier, according to his common law liability, is an insurer of the property received by him for transportation, against all loss and damage happening thereto while under his control, unless occasioned by the act of God or the public enemy. With this exception the common carrier warrants

the safe delivery of the property entrusted to him against all contingencies. (*Story on Bailment*, §§ 489, 490. *Edwards on Bailment*, 454. 2 *Kent*, 602. 1 *T. R.* 27. 10 *John.* 1. 6 *id.* 160. 11 *id.* 107. 21 *Wend.* 190. 26 *id.* 591. 2 *Barb.* 326. 10 *id.* 612. 31 *id.* 38. 39 *id.* 488. 42 *id.* 230. 10 *N. Y. Rep.* 431. 11 *id.* 485. 25 *id.* 442–445.)

Great storms are beyond the control of human agency, and loss and damage occasioned thereby are excused as the act of God. In this case the plaintiff, according to the evidence and the finding of the referee, was free from fault, and acted under an inevitable necessity in destroying a portion of the cargo. He was not, therefore, responsible for the loss, according to the rules of the common law applicable to common carriers, in the absence of a special contract. incurring his general liability. The ordinary common law liability of a common carrier may be limited or qualified by special agreement. This principle is now well settled in this state. (11 *N. Y. Rep.* 485. 24 *id.* 181. 25 *id.* 442. 43 *Barb.* 102.) These decisions are to the effect that a common carrier of goods may, by express contract, exempt himself from all liability, except perhaps in case of his own fraud or willful act. (8 *N. Y. Rep.* 375.) So, doubtless, he may by express contract assume and take upon himself *all perils* of navigation, including those attendant upon storms and tempests. In such case he would become by his agreement an insurer of the property against these perils. There would be nothing contrary to public policy, or in any respect illegal, in such a contract. By the bills of lading in this case, signed by the plaintiff, he was to deliver the property at the place of destination without delay—damage or deficiency in quantity specified, if any, to be deducted from charges by consignee.

It is insisted on the part of the defendant, that by force of this contract the plaintiff was bound to deliver the property in the same condition as when received by him, without diminution. In other words, that the plaintiff thereby became the insurer of the property while under his control,

against all possible contingencies. This is a mistaken view, unless he assumed by this contract a greater liability, than that imposed by the common law in the absence of an express contract. The question is, then, did the plaintiff by this contract increase his ordinary common law liability as a common carrier? He agreed to deliver the property, without delay at its place of destination. Such is the ordinary obligation of a common carrier on receiving property for transportation. It is the entire contract on his part briefly stated. This he is bound to perform according to its fair, true and legal import; and he is bound to perform by an actual delivery of all the property except in so far as the law excuses non-performance. The law, however, excuses a failure to deliver in case delivery be rendered impossible by the act of God. The general words of a contract or obligation, in the absence of express stipulation to the contrary, are always to be taken subject to such qualification. (8 *Cowen*, 297. 12 *Wend.* 589. 19 *id.* 341. 24 *Barb.* 124. 20 *N. Y. Rep.* 197, 211. 3 *Hill*, 570.) The language here employed is general, and the contract is such as would have been implied by law without a written agreement. The obligation of the plaintiff as common carrier required him to deliver the property at the place of destination without delay, and reducing the contract to writing did not increase his obligation; and that which would excuse a non-delivery in the one case would be a good excuse in the other. True, it was provided that any damage or deficiency in quantity should be deducted from the freight. But the damages and deficiency here contemplated were such as might by law be properly chargeable to the plaintiff in case of his neglect or failure to perform his obligation as a common carrier. If other obligations were intended to be imposed, language more direct and precise should have been employed, showing a clear purpose to add to his ordinary liability. (33 *Barb.* 241. 7 *Hill*, 533. 6 *John.* 171, 180.) I am clearly of the opinion that the contract in this case imposed no greater obligation on the

---
Price *v.* Hartshorn.
---

plaintiff than he would have incurred as common carrier without it. He was therefore excused from delivering that part of the cargo which was destroyed by inevitable necessity. But he could recover freight only for that portion delivered. As to the part destroyed, the owner must lose the goods and the carrier the freight. Such was the rule adopted by the referee.

No error was committed in the reception or rejection of evidence. The judgment should be affirmed with costs.·

[ST. LAWRENCE GENERAL TERM, October 4, 1865. *Bockes, James* and *Rosekrans,* Justices.]