## REDPATH and others *vs.* VAUGHAN and others.

Where goods were shipped at New York on the defendants' boat, for Montreal, under a bill of lading in the usual form, to be delivered in good condition, " the dangers of the seas and fire only excepted ;" *Held,* that the defendants, as carriers were not responsible for any loss or injury to the goods occasioned by the " act of God," there being a general exemption by law from liability against such a peril ; and that the exemption stipulated in the contract embraced those accidents incident to navigation, other than those denominated the act of God—all such as are denominated perils of the sea.

Accordingly *held,* that an injury to the goods, caused by the boat in which they were being towed upon the Hudson river, striking a hidden obstruction in the channel, not before existing there, except for a very brief period, and which had been recently carried there by the action of the waters, was occasioned by a peril of the sea, from which the defendants were expressly exempted by the terms of the bill of lading ; they having by that contract restricted their liability, principally if not wholly, to acts of fault or negligence on their part. .

Where there is no conflict of evidence, and the facts are undisputed, it is for the court to declare the law upon them ; and if it is of the opinion that the plaintiff has failed to establish a cause of action, it is not erroneous to order the complaint to be dismissed, without submitting the case to the jury.

THIS is an appeal by the plaintiffs from a judgment dismissing the complaint, directed by the judge at the circuit, on the ground that the plaintiffs had failed to establish a cause of action.

The action was brought against the defendants as common carriers. The complaint alleged that in June, 1864,

the plaintiffs delivered to the defendants, at the port of New York, a quantity of sugar, to be transported by them to the port of Montreal, Canada East; that the defendants received the property, and promised safely to convey and deliver the same at the place of destination; that in neglect of their duty, they so carelessly and negligently conducted themselves in that behalf, that the sugar became wet and injured, and partly lost, which injury was not by reason of the dangers of the seas or fire, but wholly occurred through the negligence of the defendants.

The defendants interposed various defenses, the substance of which was that the injury and loss were occasioned by a peril of the seas, and not by reason of any neglect or want of care on their part.

The evidence showed that the goods were shipped at New York, on the defendants' boat "*Eugene Copeland*," under a bill of lading in the usual form, to be delivered in good condition at Montreal, "the dangers of the seas and fire only excepted." On the voyage to Montreal the boat was towed upon a hidden obstruction to navigation in the Hudson river, between Troy and Albany, and sunk. It was proved that the tow was properly made up and run with usual care. The boat was placed in the middle in the head tier of boats, on the starboard side, which was deemed the best position in the tow—was well built and in good condition. On the occasion of the accident, the tow was proceeding in the proper channel at the usual speed, when it struck some obstruction, not before existing there, except for a very brief period; and which had been then recently carried there by the action of the waters. Every exertion was made to save the cargo.

*Miller, Peet & Nichols* and *C. L. Allen,* for the appellants. I. The duty of the common carrier to transport and safely deliver is *prima facie* absolute. His liability for the proper discharge of this duty can only be relieved by showing

Redpath *v.* Vaughan.

that he was prevented by the act of God, public enemies, or by the special exception provided for in his contract, *i. e.* "dangers of the seas and fire," and the burden of proving this rests on the carrier. So that, in this case, the defendants were bound to prove that they were excepted from the operation of this ordinary principle of law, as to which we say: 1. The alleged accident, as per the defendants' proof, does not bring the defendants' case within the class of cases where such exemption has been held to apply, nor within the terms of the exception specified in the bill of lading. 2. The expression "dangers of the seas," in the bill of lading, which may be understood to mean the same thing as "perils of the seas," is defined to be "such cases as are of an extraordinary character, or arise from some irresistible force, or some overwhelming power which cannot be guarded against by the ordinary exertions of human skill and prudence." (*Angell on Com. Car.* 4th ed. 1868, *p.* 143, § 167. *Schooner Reside,* 2 *Sumner,* 571. *Abbott on Shipping, v.* 9, *ch.* 4, § 1. *Kent's Com.* 216, 217. *Elliott* v. *Russell,* 10 *John.* 1. *Michaels* v. *N. Y. Cent. R. R. Co.,* 30 *N. Y. Rep.* 564. *Merritt* v. *Earle,* 29 *id.* 115.) Now, without reference to any testimony offered by the plaintiffs creating a conflict of evidence, it was for the jury to say whether, if the defendant's theory is true as to the cause of the accident, that cause was one of those thus defined as among the "perils of the sea," and whether thereby the defendants had rebutted the legal presumption of negligence. The court erred in taking this from the jury. (*Ernst* v. *Hudson River R. R. Co.,* 35 *N. Y. Rep.* 9, 46, 47, *and cases there quoted.* *Sheridan* v. *Brooklyn and Newtown R. R.,* 36 *id.* 39, 41.)

II. The defendants' evidence, if uncontradicted, had this effect—no more. It raised a presumption on which the jury were to find whether the injury resulted from the cause testified to by the defendants as having been the

probable cause of the collision, for it will be noted that the defendants' witnesses do not swear positively that the sunken log did cause the collision, only that from the circumstances it may have been, probably was, the cause. This conjecture or opinion of the witnesses was but an opinion, which the finding of the jury might or might not resolve into a fact. Until that was done it was not an ascertained fact, and the court erred in taking it away from the jury. (*See cases above cited.*)

III. In short, the defendants offered evidence *tending to show* that possibly the accident to their boat might have been caused by a sunken stump; possibly this was so, possibly not. The jury were not allowed by the court to determine this question, but the court resolved the possibility into a certainty, adopted the theory of the defendants, resolved that into a fact, which they had only suggested might probably be the fact, and acting on this presumption assumed to decide both law and fact, and removed the case from the jury, who alone had the right to decide the question.

IV. But, further, the defendants' presumption (if it be such) as to the probable cause of the collision, was met by the plaintiffs by a conflict of testimony, and, therefore, it was no longer a question of presumption, but of conflicting evidence, on which the jury alone had a right to pass, and the court erred in assuming the province of the jury, and passing upon the point. (*Renwick* v. *N. Y. Central R. R. Co.*, 36 *N. Y. Rep.* 132. *Clark* v. *Eighth Avenue R. R. Id.* 135. *Ferris* v. *Union Ferry Co., Id.* 312.)

V. To decide if the loss was by a peril of the sea, depended on the existence or non-existence of negligence, and was to be tried by jury. (*Williams* v. *Bronson*, 1 *Murphy*, 417. *Marsh* v. *Blyth*, 1 *Nott & McC.* 170. *See Whiteside* v. *Russell*, 8 *Watts & S.* 44; 28 *Minn. Rep.* 323; 41 *Penn. Rep.* 378; 21 *Wend.* 198.)

Redpath *v.* Vaughan.

*Joseph Potter*, for the respondents.   I. The damage was caused by a peril of the sea, which damage was excepted by the bill of lading.   " Perils of the sea" are the same as " perils or dangers of the river "   (*Angell on Carriers*, § 168.   1 *Alabama Rep. Stew. & Port.* 135, 176, &c.) Besides, the river at this point was an arm of the sea. " This exception of the ' perils of the sea' in a bill of lading, has received a fixed construction, narrow enough, yet somewhat wider than the act of God."   It means all unavoidable accidents arising in the course of navigation, while an act of God is defined to be a force or violence of nature.   Some confusion has arisen in the cases from using the terms interchangeably; but the act of God excuses the carrier, without regard to the form of his contract, while it is his contract, alone, which excuses the carrier from loss by the ordinary perils of navigation. The distinction is expressly taken in *Gordon* v. *Buchanan*, 5 *Yerg. Tenn. Rep.* 72,) for, in that case, it is said : " That the act of God means disasters with which the agency of man has nothing to do, such as lightning, tempests, and the like.   Many disasters, which would not come within the definition of the act of God, would fall within the exception in this receipt, such, for instance, as losses occasioned by hidden obstructions in the river newly placed there, and of a character that human skill or foresight could not have discerned or avoided."   (7 *id.* 340.) In *Williams* v. *Brownson*, (1 *Murphy's N. C. Rep.* 417,) it is held that the exception of dangers of the sea, in a bill of lading, " signifies the natural accidents incident to the navigation, not such as might be avoided by the exercise of that discretion and foresight which are expected from persons in such employment, and that to ascertain whether the loss was by such dangers, it must be inquired whether the accident arose through want of proper foresight and prudence."   In *Marsh & Howren* v. *Blithe*, (1 *Nott & McCord*, 170,) the point decided was, that to determine

whether the cause of the loss was a peril of the sea, the existence or non-existence of negligence was to be tried by the jury. At section 169 of *Angell on Carriers*, it is said: "The decision in *Dole* v. *Hall*, (1 *Wils.* 281,) has been considered to furnish a good illustration of the general principle by which the master and owners of a vessel are held responsible for every injury occurring to a vessel, that might have been prevented by human foresight or care, and that by 'peril of the sea' is meant a natural, and not merely an inevitable accident." (§ 169 *Angell on Carriers. Abbott on Shipping*, 371. 3 *Kent's Com.* 300. 19 *Wend.* 329–333.) In the last case the question of whether the loss occurred by "dangers of Lake Ontario," was decided for the defendant on the ground that he was guilty of no negligence, and the verdict of the jury set aside. Savage, J. says, in *Aymar* v. *Astor*, (6 *Cowen*, 266,) "Perils of the sea, as used in contracts of insurance, do not include those losses which may be prevented by proper care," and that "a carrier for hire ought, by the general rule, to be responsible only for ordinary neglect." *Lowry* v. *Russell*, (8 *Pick.* 360,) held that the injury done to a carrier ship or goods on board by her settling on the ebbing of the tide, on a hard substance at the bottom of the harbor when she is properly moored, is an injury occasioned by a peril of the sea, is beyond all doubt. (*And see Kingsford* v. *Marshall*, 8 *Bing.* 458; *Potter* v. *Suffolk Ins. Co.*, 2 *Sumn.* 197.) Kent, in his *Commentaries*, (*vol.* 3. *p.* 300,) says: "Perils of the sea apply to all those natural perils and operations of the elements which occur without the intervention of human agency, and which the prudence of man could not foresee nor his strength resist," and then gives instances of loss, such as wearing of cable by friction, wear and tear of equipment of the ship, destruction of ship by worms, which are not perils of the sea, because they are losses by *negligence*, and not *casus fortuitus.* (*And see Abbott on Shipping*, 470, 5th Am. ed.; *Angell on Carriers*, §§ 166,

Redpath *v.* Vaughan.

167, *and note, and* §§ 512–521 ; *Story on Bailments,* 3*d ed.* § 512, *a.*) *Phillips on Insurance,* defines "perils of the sea" to comprehend those of winds, waves, lightning, rocks, shoals, collisions, and in general all causes, losses and damage arising from the elements, and inevitable accidents other than of capture. Story says, dangers of the sea and perils of the sea, are the same in marine insurance policies and bills of lading. (*Story on Bailments,* 3*d ed.* § 608. 3 *B. & A.* 315. 2 *Sumner,* 567. 3 *Marsh,* 567.)

The injury in question was clearly the result of a peril of navigation. The defendants were guilty of no negligence. Their boat was staunch and in good order, properly manned, well placed in a tow in the usual manner of navigation; the tug was in good order, with skillful and experienced master and pilot, pursuing her voyage in the usual channel, which had always heretofore been safe. The immediate cause of the injury was a hidden obstruction to navigation recently brought down by the current and anchored in the channel of the river. Immediately, on the injury happening, every reasonable exertion was made to rescue the cargo from loss or injury. The defendants took upon themselves the burden, and *proved* themselves without fault; proved beyond contradiction that the injury was the result of an inevitable accident, incident to navigation, which no human sagacity could have foreseen, and no human skill or strength could have averted. The evidence was uncontradicted, clear, explicit and reasonable, and there was nothing to submit to the jury, but the defendants were entitled as a matter of *right* to a dismissal of the complaint. (13 *Barb.* 9. 7 *Hill,* 529. 24 *How. Pr.* 97. *Id.* 210. 24 *N. Y. Rep.* 430.)

II. The contract having been made in Canada, is governed by the laws of that province. (9 *N. Y. Rep.* 62. 2 *John.* 235. 12 *id.* 142. 3 *N. Y. Rep.* 266. 8 *How. Pr.* 8.) By the laws of that province a common carrier is not liable for loss or injury occasioned by inevitable accident or superior force,

and fault in the carrier is essential to his liability. (*Civil Code Lower Canada, article* 1675. *Story on Bailments,* §§ 458, 459, 488.) Story says, in sections 488, 458, 459, under the civil law, "carriers are exempted from losses by mere accident and inevitable casualty." *Casus fortuitus* is defined in the civil law to be "a loss which might happen to the most diligent." (3 *Kent's Com.* 217.) If a bar was occasioned by a recent and sudden collection of sand (or a rock or anchor fall in) in a place where ships before sailed with safety, the loss is to be attributed to a peril of the sea, which is the same as the *vis major* or *casus fortuitus* of the civil law. (3 *Kent's Com.* 217. *Abbott on Shipping, part* 3, *ch.* 4, § 1.) In this case this defense is of but little importance, as the limitation of the liability of the defendants by the contrancts contained in their bill of lading is practically the same as that made by the law of Canada without any special agreement; the only difference being that by the contract the perils excepted are only those of navigation. By the law, all fortuitous events, whether by *land* or sea, excuse the carrier.

*By the Court,* BOCKES, J. There can be no question as regards the law applicable to a common carrier. He is liable as an insurer of the property received by him for transportation, against all loss and damage happening thereto while under his control, unless occasioned by the act of God or the public enemy, or unless excused by special contract. As was said in *Price* v. *Hartshorn,* (44 *Barb.* 655,) with these exceptions the common carrier warrants the safe delivery of the property intrusted to him against all contingencies. (*See cases cited* 44 *Barb.* 666.) The counsel for the appellant is therefore unquestionably correct in saying that the duty of the common carrier to transport and safely deliver is *prima facie* absolute; and that he can only be relieved from liability by establishing one or the other of the exceptions. And the burden of proof

Redpath *v.* Vaughan.

to establish the exemption is on the defendant. Where, however, the facts are undisputed, the question of liability is one of law. In this case there can be, I think, no well grounded charge of negligence or improper conduct on the part of the defendants, causing the injury complained of. The evidence is clear and undisputed that the boat was in good condition—was in the safest position in the tow ; and the tow was run at the usual speed, in the accustomed channel, and in all respects properly conducted. The obstruction which caused the injury was unquestionably of recent origin. Whatever it was, it had been there for only a brief period, having been carried and lodged in the channel by the action of the waters, and was wholly submerged.

By the contract between the parties (bill of lading,) the defendants were exempted from liability for loss and damage resulting from " the dangers of the seas and fire." That the injury in this case resulted from " dangers of the seas " there can be, I think, no question. It occurred in navigable waters, and by reason of a hidden obstructions of recent origin not avoidable even with extraordinary care and foresight. It was held in *Gordon* v. *Buchanan*, (5 *Yerger*, 72,) that dangers of the seas, or, which is the same, perils of the sea, included a hidden obstruction in a river, newly placed there, and of a character which human skill and foresight could not discover or avoid. In *Kingsford* v. *Marshall*, (8 *Bing.* 458,) Tindall, Ch. J. says, that an injury done to a ship or goods therein, by settling on a hard substance at the bottom of a harbor is an injury oscasioned by the perils of the sea is beyond all doubt. Kent says, (3 *Kent*, 300,) that perils of the sea are all those natural perils and operations of the elements which occur without the intervention of human agency, and which the prudence of man could not foresee, nor his strength resist. In *Whitesides* v. *Russell*, (8 *Watts & Serg.*

---

Redpath *v.* Vaughan.

---

44,) a steamboat ran upon a stone in the Ohio river, and thus a hole was knocked in her bottom. The court held the carrier liable, notwithstanding the clause in the bill of lading, dangers of the sea excepted ; unless he could show that he was not negligent or in fault; thereby marking the exception from liability in such case, in the absence of negligence or wrongful act. Story says, (*Story on Bailments*, § 516,) that "if a carrier ship should perish in consequence of striking against a rock or shallow, the circumstances under which that event took place must be ascertained, in order to decide whether it happened by a peril of the sea, or by the fault of the owner, carrier or master. If the situation of a rock or shallow is generally known and the ship is not forced upon it by adverse winds or tempests, the loss is to be imputed to the fault of the master. And it matters not, in such case, whether the loss arises from his own rashness in not taking on a pilot, or from his own ignorance or unskillfulness. On the other hand, if a ship is forced upon a rock or shallow by adverse winds or tempests, or if the shallow is occasioned by a sudden and recent collection of sand in a place where ships before could sail with safety ; or if the rock or shallow is not generally known ; in all these cases the loss is to be attributed to the act of God, and it is deemed a peril of the sea." In *Merritt* v. *Earle*, (29 *N. Y. Rep.* 115,) the injury was caused by running upon the mast of a sunken vessel standing several feet out of water, the vessel having been recently wrecked in a squall. The carrier was held liable. It was not denied that the loss was occasioned by a peril of the sea, but the question was whether it occurred by the " act of God," and therefore a peril of the sea against which no one is to be held responsible, in the absence of an express contract. Judge Wright says : " The law adjudges the carrier responsible, irrespective of any question of negligence or fault on his part, if the

loss does not occur by the act of God or the public ene-emies. With these exceptions, the carrier is an insurer against all losses." He adds: " The expressions ' act of God' and ' inevitable accident' have sometimes been used in a similar sense and as equivalent terms. But there is a distinction. That may be an inevitable accident which no foresight or precaution of the carrier could prevent; but the phrase ' act of God ' denotes natural accidents that could not happen by the intervention of man, as storms, lightnings and tempests."

Now in the case at bar, the defendants, as carriers, were not responsible for any loss or injury to the plaintiffs' goods, occasioned by the " act of God." Against such a peril, there existed a general exemption from liability, by law. But there was a further exemption, by the contract, in this case. The defendants were not to be liable for *any* dangers (perils) of the sea. It was so stipulated in the bill of lading. The exemption, therefore, embraced those accidents incident to navigation, other than those denomi-nated the act of God—all such as are designated perils of the sea. The injury occasioned to a vessel safely moored in harbor, by settling on a hard substance, was said to be an injury from a peril of the sea. (*Per Tindall, Ch. J. Kingsford* v. *Marshall, supra.*) The running upon a stone in the Ohio river was a peril of the sea. (*Whiteside* v. *Russell, supra.*) The mistaking of a light on entering a harbor, was a peril of the sea. (*McArthur* v. *Sears*, 21 *Wend.* 190.) So also the mast of a sunken vessel. (*Mer-ritt* v. *Earle, supra.*) While these are perils of the sea, they are not to be denominated the act of God. Judge Cowen says, in *McArthur* v. *Sears*, (*supra,*) the words " perils of the sea " are evidently of broader compass than the words " act of God." In *Gordon* v. *Buchanan*, (5 *Yerg.* 71,) Green, J. is reported as saying: " The exception in this bill of lading, of the dangers of the river, which are

unavoidable, narrows down the liability of the owner of the boat." He adds: "Many of the disasters which would not come within the definition of the act of God would fall within the exception; such for instance as losses occasioned by hidden obstructions in the river, newly placed there, and of a character that human skill and foresight could not have discovered and avoided." Judge Cowen remarks in *McArthur* v. *Sears*, (*supra*,) as follows: "Mr. Justice Story seems to suppose that if an obstruction be secretly sunk in the stream, and not being known to the carrier, his boat founder, he would be excused. But the cases do not appear to sustain him, unless the obstruction were sunk by the act of God, or by a sudden and extraordinary flood."

It would seem then very plain, from these authorities, that the injury complained of in this case was occasioned by a peril of the sea, from which the defendants were expressly exempted by the terms of the bill of lading. Natural causes, the action of the waters, had recently produced the danger where navigation could before be conducted with safety, and in so far as could be observed, could still be so pursued. This became a peril of the sea, and from such perils the defendants had contracted for exemption. They had by contract restricted their liability, principally if not wholly, to acts of fault or negligence on their part.

It is not urged that the case stands on any different grounds, for the reason that the contract was between residents of Canada; this subject need not therefore be considered.

I am clearly of the opinion that the nonsuit was properly ordered. There was no conflict of evidence requiring a submission of the case to the jury. The facts were wholly undisputed, and it was therefore for the court to declare the law upon them.

Nor was there any error in the admission, or rejection of evidence, affecting the merits.

. The judgment appealed from, should be affirmed.

