## Case No. 16,876.

### VAN SCHAACK et al. v. NORTHERN TRANSP. CO.

[3 Biss. 394; 5 Chi. Leg. News, 181; 4 Leg. Op. 537; 7 Am. Law Rev. 565.] [1]

Circuit Court, N. D. Illinois.   Dec. Term, 1872.

LIMITATION BY CARRIER OF COMMON LAW LIABILITY.

1. A common carrier may, by special contract, limit his common law liability in case of fire.

2. For this purpose it is sufficient that bills of lading containing such exemption be delivered to the agent or person bringing the goods, or placed in a box from which they were accustomed to obtain bills of lading for shipments from time to time made.

3. In such case the burden is upon the plaintiffs to show that they were not barred by the bill of lading.

On the 21st day of September, 1871, Donald Kennedy, the agent of the plaintiffs, shipped from Boston to Chicago, one hundred and sixty cases of drugs called "Medical Discovery." They were shipped by the Northern Transportation Company, defendant, and arrived in Chicago, the port of destination, where the plaintiffs resided and did business at that time, on the afternoon of Saturday, the 7th of October, 1871, by the steamer Milwaukee, belonging to the Northern Transportation Company. The goods were landed and placed in the warehouse of the defendant, on the dock, shortly after the arrival of the steamer at the wharf, and there remained until Monday morning, the 9th of October, 1871, when they were consumed in the great fire in Chicago. This was an action on the case against the defendant, as a common carrier.

Clarkson & Van Schaack, for plaintiffs.
Waite & Clarke, for defendant.

DRUMMOND, Circuit Judge. I shall decide the case on the ground that there was a bill of lading which was a contract between the parties, exempting the defendant from loss by fire. There is considerable difficulty in relation to the question of notice, whether or not the plaintiffs had a reasonable time after the notice was given, if given, to remove the goods from their place of deposit after they were landed. It is not necessary to decide the case on that ground; but I think that the weight of evidence is that there was a contract between these parties, which constituted the measure of responsibility on the part of the carrier in relation to the transit of the goods.

When the courts say that it is competent

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.   7 Am. Law Rev. 565, contains only a partial report.]

for the carrier to relieve himself from his common law liability, and that it cannot be done by mere inference—that it must satisfactorily appear that the carrier has done so with the consent of the consignor—it is not meant that a court must not consider testimony according to its legal effect and according to the fair inferences deducible from what appears in the case in relation to this question, namely: whether there was a contract between the parties by which the carrier was to be exempt from his common law liability.

In this case the testimony bearing upon this question of the bill of lading is contained in the deposition of Benjamin K. Little, who testifies as follows: "On the 21st day of September, 1871, one hundred and sixty boxes of merchandise called 'Kennedy's Medical Discovery, were shipped by said company from Boston to Chicago, consigned to said Van Schaack, Stevenson & Reid. They were shipped by and at the request of Donald Kennedy, on application at the office of the company. At the time of said shipment duplicate bills of lading of said merchandise, under which said property was shipped, were made out. Said bills of lading were either delivered to said Kennedy or to his teamster who brought the goods at the time of the contract for shipment, or were at the time of said contract for shipment directed to D. Kennedy, and placed in a box in the office of said company, at No. 7 State street, as aforesaid, to which box the said Kennedy and his said teamster had access, and from which, in all cases of shipment of goods, they were accustomed to obtain bills of lading when the same were not handed to them personally. Said Kennedy had for years very frequently shipped goods from Boston to the west by said Northern Transportation Company, through the office at which I was employed, as aforesaid, and had been accustomed to obtain the bills of lading as above stated. Said duplicate bills of lading were either made by me personally in the performance of my duty as such clerk, or by my assistant under my immediate supervision and examination. The making of bills of lading of the company and shipments of goods are my duty."

One of the plaintiffs was examined as a witness, and testified that no bill of lading was ever received by the plaintiffs; that after the goods were ordered, all they received was an invoice containing a memorandum that they had been shipped by the Northern Transportation Company; therefore it may be assumed that there is no evidence which, fairly considered, tends to establish that the plaintiffs themselves ever received this bill of lading.

Now this is the testimony in relation to the contract, which, it is alleged, was made between the parties as to the shipment and transit of these goods which were destroyed by fire; and the question is, looking at the testimony fairly, and drawing the infer-

ences which can be justly drawn from the testimony, whether it is not a necessary conclusion that there was a contract made in relation to the transit of this property, and I think that there was.

Now there is often great difficulty, undoubtedly, in the application of this rule which allows a carrier to restrict his common law liability simply by making out a bill of lading and delivering it to the consignor or to his agent. and inferring thereby that the common carrier is exempt from liability; and while I am not prepared to say that the mere existence of such a state of facts would warrant the conclusion that a contract was made by the consignor. still we are to look at what is established, and see what it was within the power of the party to prove—see if the inference is not fairly to be drawn from the testimony which is presented. Now, this witness annexed to his deposition a copy of the bill of lading, which contains a clause of exemption from the common law liability in case of loss by fire, and without saying that all the various conditions that were contained in this bill of lading necessarily bound the consignor, still it is fairly inferable, I think, that this defendant was in the habit of transporting property shipped by Mr. Kennedy on a bill of lading which contained this exemption, and that this bill of lading came into the possession of Mr. Kennedy, and was received and acquiesced in by him as the measure of responsibility on the part of the defendant in the transit of those goods—at any rate so far as the exemption from loss in case of accidental fire is concerned. The bills of lading were made out there. They were either given to Mr. Kennedy himself. to his teamster who delivered the goods, or were placed in a box where they were in the habit of placing bills of lading when they were not personally delivered to Mr. Kennedy, and where he was in the habit of receiving them. and for years he had been accustomed to ship goods to the west by this line.

Now, what is the necessary conclusion from this testimony in the absence of all countervailing testimony? It is that this bill of lading was delivered, and received by Mr. Kennedy with this exemption clause in it. This was on the 21st of September. 1871. The evidence shows that property was shipped under the precise form of this bill of lading that has been introduced, at least during that season. Now. is it not fairly inferable that Mr. Kennedy understood that the goods were to be shipped. the carrier being relieved from his common law liability in that respect? It is, as I think. If it were not so it was competent for the plaintiffs, and was their duty under the state of case which is made by this deposition, to rebut the inferences which necessarily grew out of the statement of facts made by Mr. Little. They had no right, I think. to rest upon the doctrine that it was necessary for the defendant to rebut, or to prove that the contract was delivered to Mr. Kennedy. [The plaintiffs have not done so. Kennedy was their own agent; he was the party that shipped the goods. If he did not receive the bill of lading, or if he was not bound by this contract in any way, it was competent for them to show it; and. I think, they were bound to do it. I decide the question, therefore, without reference to the question as to whether there was a reasonable time on the part of the plaintiffs to receive and take away the goods.] [2]

Of course it is a hard case: but courts are full of hard cases and it is simply a question as to who shall bear this loss; and it seems to me, under all the circumstances of the case, that the plaintiffs must bear it. and not the defendant. The issue and judgment. therefore, will be for the defendant.

NOTE. The liability cannot, however, be limited by merely showing a usage to give bills of lading containing certain exemptions. Illinois Cent. R. Co. v. Smyser, 38 Ill. 355. Nor by mere notice, even though brought home to the shipper. Nevins v. Bay State Steamboat Co., 4 Bosw. 225; Rawson v. Pennsylvania R. Co.. 2 Abb. Prac. (N. S.) 220; Prentice v. Decker. 49 Barb. 21: Belger v. Dinsmore, 34 How. Prac. 421. Where the contract excepted losses by fire, carrier held not liable for such loss. Parsons v. Monteath, 13 Barb. 353: Dorr v. New Jersey Steam-Nav. Co., 4 Sandf. 136; Mercantile Mut. Ins. Co. v. Chase, 1 E. D. Smith, 115. That a common carrier may limit his liabilities by contract, see York Co. v. Illinois Cent. R. Co.. 3 Wall. [70 U. S.] 107; Merriman v. The May Queen [Case No. 9,481]; Seller v. The Pacific, 1 Or. 409: Illinois Cent. R. Co. v. Morrison. 19 Ill. 136; Western Transp. Co. v. Newhall, 24 Ill. 466; Bingham v. Rogers. 6 Watts & S. 495: Lee v. Marsh. 43 Barb. 102; Price v. Hartshorn. 44 Barb. 655. A person receiving a printed notice limiting the carrier's liability is chargeable with knowledge of its contents. Hopkins v. Westcott [Case No. 6,692]. And a receipt containing clauses of limitation is binding, if accepted with full knowledge of its contents. Adams Exp. Co. v. Haynes, 42 Ill. 89. Simple delivery of such receipt not conclusive. Illinois Cent. R. Co. v. Frankenberg. 54 Ill. 88; Prentice v. Decker, 49 Barb. 21. The right of common carriers to restrict their common law liability has recently been elaborately reviewed by the United States supreme court in New York Cent. R. Co. v. Lockwood [17 Wall. (84 U. S.) 357] October Term, 1873, and numerous authorities in both the state and federal courts are there cited and commented on.

VANSICKLE (UNITED STATES v.). See Case No. 16,609.

VAN SLYKE (UNITED STATES v.). See Case No. 16,610.